UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

NO. 24-1386
_____

**UNITED STATES,
APPELLEE**

**v.**

**MICHAEL FRANCIS,
DEFENDANT - APPELLANT**
_____

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE
_____

**BRIEF AND ADDENDUM OF MICHAEL FRANCIS**
_____

Richard Guerriero
1st Circuit Bar ID 1164673
Oliver Bloom
1st Circuit Bar ID 1211240
Lothstein Guerriero, PLLC
39 Central Square, Suite 202
Keene, NH 03431
(603) 352-5000
richard@nhdefender.com
oliver@nhdefender.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................3

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD...........................6

JURISDICTIONAL STATEMENT .......................................................7

ISSUE PRESENTED FOR REVIEW ....................................................8

STATEMENT OF THE CASE.............................................................9

SUMMARY OF ARGUMENTS ..........................................................13

ARGUMENT: THE DISTRICT COURT ERRED IN NOT GRANTING THE MOTION TO SUPPRESS ................................................................16

*Standard of Review* ....................................................................16

*The Good Faith Exception Does Not Bar a Challenge to the Sufficiency of the Affidavit for the Search Warrant Because the Law Enforcement Affiant Recklessly Failed to Include Information which Discredited the Informant* .......16

*The District Court Denied the Motion to Suppress Because It Found the Affidavit Was Sufficient Even After Considering the Omitted Discrediting Information* ...19

*Even Before Considering the Omitted Information About the Informant's Dishonesty, the Affidavit Did Not State Sufficient Facts on Its Face to Support a Finding of Probable Cause* ................................................................20

*The Affidavit Did Not Establish the Probable Veracity and Basis of Knowledge of the Informant* .......................................................................23

*The Affidavit Did Not Establish that the Informant's Statements Reflected Firsthand Knowledge* ..................................................................25

*The Affidavit Only Described Corroboration of a Few Innocent Facts and Did Not Provide Corroboration of Any Criminal Conduct or Future Conduct of Francis, Whether by Surveillance or Otherwise* ..................................................27

*The Agent Claimed to Have Assessed the Probable Significance of the Informant's Statements, But in Reality, the Agent Withheld Information Which Would have Discredited the Informant* ..................................................31

*Agent Burke's Conduct Was Either "Reckless" or "Knowing."* ........................35

CONCLUSION ..........................................................................39

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a) ..........................40

CERTIFICATE OF SERVICE ...........................................................40

TABLE OF AUTHORITIES

Cases

*Alabama v. White*, 496 U.S. 325 (1990) ............................................................ 13, 27

*Florida v. J.L.*, 529 U.S. 266 (2000) ................................................................. 13, 28

*Franks v. Delaware*, 438 U.S. 154 (1978) ........................................... 12, 16, 17, 18

*Illinois v. Gates*, 462 U.S. 213 (1983) ......................................................... 13, 27, 34

*Johnson v. United States*, 333 U.S. 10 (1948) ............................................................ 33

*United States v. Ackies*, 918 F.3d 190 (1st Cir. 2019) ............................................ 24

*United States v. Arias*, 848 F.3d 504 (1st Cir. 2017) .............................................. 17

*United States v. Barbosa*, 896 F.3d 60 (1st Cir. 2018) ........................................... 17

*United States v. Belton*, 414 F. Supp. 2d 101 (D.N.H. 2006) ................................. 38

*United States v. Brown*, 500 F.3d 48 (1st Cir. 2007) ................................. 29, 30, 32

*United States v. Brunette*, 256 F.3d 14 (1st Cir. 2001) ........................................... 17

*United States v. Campbell*, 732 F.2d 1017 (1st Cir. 1984) ..................................... 34

*United States v. Capozzi*, 347 F.3d 327 (1st Cir. 2003) ........................................... 30

*United States v. Carmona*, 103 F.4th 83 (1st Cir. 2024) ........................................ 24

*United States v. Croto*, 570 F.3d 11 (1st Cir. 2009) ........................................ 30, 35

*United States v. Elliott*, 322 F.3d 710 (9th Cir. 2003) ............................................ 38

*United States v. Fuccillo*, 808 F.2d 173 (1st Cir. 1987) .......................................... 18

*United States v. Gibson*, 928 F.2d 250 (8th Cir. 1991) ........................................... 30

*United States v. Gifford*, 727 F.3d 92 (1st Cir. 2013) ........................... 17, 29, 30, 36

*United States v. Gonsalves*, 859 F.3d 95 (1st Cir. 2017) ........................................ 23

*United States v. Greenburg*, 410 F.3d 63 (1st Cir. 2005) ................................. 25, 27

*United States v. Hall*, 113 F.3d 157 (9th Cir. 1997) ...................................................31

*United States v. Lanza-Vázquez*, 799 F.3d 134 (1st Cir. 2015) ..............................16

*United States v. Leon*, 468 U.S. 897 (1984) ................................................ 13, 17, 18

*United States v. Leonard*, 17 F.4th 218 (1st Cir. 2021) .............................. 17, 18, 19

*United States v. Link*, 238 F.3d 106 (1st Cir. 2001) ................................................25

*United States v. Maglio*, 21 F.4th 179 (1st Cir. 2021) .............................................22

*United States v. McLellan*, 792 F.3d 200 (1st Cir. 2008) ........................................17

*United States v. McLeroy*, 584 F.2d 746 (5th Cir. 1978) .........................................31

*United States v. Meling*, 47 F.3d 1546 (9th Cir. 1995) ............................................37

*United States v. Ramírez-Rivera*, 800 F.3d 1 (1st Cir. 2015) ........................... 27, 28

*United States v. Ranney*, 298 F.3d 74 (1st Cir. 2002) .............................................35

*United States v. Rumney*, 867 F.2d 714 (1st Cir. 1989) .................................... 13, 38

*United States v. Schaefer*, 87 F.3d 562 (1st Cir. 1996) ..................................... 17, 35

*United States v. Stewart*, 337 F.3d 103 (1st Cir. 2003) ...........................................33

*United States v. Strother*, 318 F.3d 64 (1st Cir. 2003) ............................................30

*United States v. Sylvestre*, 78 F.4th 28 (1st Cir. 2023) ............................................24

*United States v. Tanguay*, 787 F.3d 44 (1st Cir. 2015) .............................. 13, 35, 37

*United States v. Tanguay*, 907 F. Supp. 2d 165 (D.N.H. 2012) .............................38

*United States v. Tiem Trinh*, 665 F.3d 1 (1st Cir. 2011) .................................. passim

*United States v. Tuter*, 240 F.3d 1292 (10th Cir. 2001) ..........................................28

*United States v. Tzannos*, 460 F.3d 128 (1st Cir. 2006) ..........................................16

*United States v. Vigeant*, 176 F.3d 565 (1st Cir. 1999) ...........................................18

*United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996) ...........................................31

*United States v. White*, 804 F.3d 132 (1st Cir. 2015) ...............................................23

*United States v. Williams*, 737 F.2d 594 (7th Cir. 1984) ........................................35

*United States v. Winchenbach*, 197 F.3d 548 (1st Cir. 1999) .................................30

Statutes

18 U.S.C. § 924 ...........................................................................................................10

18 U.S.C. § 922(g)(1) .................................................................................................10

21 U.S.C. § 841 ...........................................................................................................10

21 U.S.C. § 841(a)(1) ...................................................................................................7

28 U.S.C. §1291 ............................................................................................................7

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

The Court should hear oral argument because this case presents important legal issues regarding whether an affidavit for a search warrant, based almost entirely on statements from an informant, may support a finding of probable cause when the informant had no track record of reliability, when law enforcement only corroborated limited innocent facts from the informant, when law enforcement did not corroborate any claims of criminal conduct or predictions of future conduct, when the informant had a prior felony conviction for a crime of dishonesty, and when the agent seeking the warrant recklessly omitted that conviction from his affidavit.

## JURISDICTIONAL STATEMENT

This is an appeal in a criminal case from a final judgment of conviction in the District Court of New Hampshire. The Defendant-Appellant, Michael Francis, pleaded guilty on November 6, 2023. Add. 1.[1] The district court imposed the final judgment and sentence for a conviction as provided in 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), on April 10, 2024. Add. 1. Francis was sentenced to one-hundred-fifty months imprisonment to be followed by four years of supervised release. Add. 2. The notice of appeal was filed on April 18, 2014. App. 417. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] References to the record are as follows:
"Add. #" refers to the page numbers of the Addendum to this brief;
"App. #" refers to the page numbers of the Joint Appendix;
"S.App. #" refers to the page numbers of the Sealed Appendix.

## ISSUE PRESENTED FOR REVIEW

The affidavit provided in the application for a search warrant for Francis's car was based almost entirely on statements from an informant. The informant had no track record of reliability. The agent who wrote the affidavit only corroborated limited innocent facts obtained from the informant and did not corroborate any claims of criminal conduct or predictions of future conduct. The informant had a prior felony conviction for a crime of dishonesty, but the agent seeking the warrant recklessly omitted that conviction from his affidavit.

The issue is whether the district court erred in denying Francis's motion to suppress evidence from the car.

## STATEMENT OF THE CASE

A drug dealer facing serious felony charges made a deal with law enforcement to become an informant.[2] The drug-dealer-turned-informant claimed to FBI Agent Ryan Burke that Appellant Michael Francis provided drugs to the informant in the past. Agent Burke obtained a search warrant for Francis's car based on the claims made by the informant. Agent Burke and other law enforcement surreptitiously observed Francis prior to executing the search warrant. They saw another person put a bag in Francis's car, although Francis was not in the car at the time. Francis and the other person later drove away. When they parked, the agents detained them, searched the car, and found cocaine in the bag. This appeal concerns Francis's challenge to the constitutionality of the search warrant for the car. The argument portion of this brief necessarily addresses Agent Burke's factual allegations in the affidavit, as well as information which Burke left out of the affidavit and which the defense claims discredited the informant, so those details are reserved for that later discussion.

---

[2] The Defense and the Government referred to the individual as an "informant" in their initial motions. App. 25-43, 83-107. At the hearing, the FBI agent used the term "cooperating witness," and the Government and district court subsequently adopted this terminology. App. 149-367; Add. 8-30. Considering that the individual's confidentiality was protected by redactions to the affidavit, that he was facing serious criminal charges, and that he was providing information willingly to attempt to limit his criminal liability, Francis submits that he easily qualifies as an "informant" and uses that term in this brief.

Following the search and discovery of the cocaine in Francis's car, law enforcement conducted an additional search of a nearby apartment. Thereafter, the Government indicted Francis on one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). App. 2. Approximately nine months later, the Government brought a five-count superseding indictment, alleging violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) & 846, conspiracy to distribute and possession with intent to distribute more than 500 grams of cocaine [Count 1]; 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(ii), possession with intent to distribute more than 500 grams of cocaine [Count 2]; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi) & 841(b)(1)(A)(viii), possession with intent to distribute more than 400 grams of fentanyl and 50 grams or more of methamphetamine [Count 3]; 18 U.S.C. §§ 922(g)(1) & 924(a)(2), possession of firearms and ammunition by a prohibited person [Count 4]; and, 18 U.S.C. § 924(c)(1)(A)(i), possession of firearms in furtherance of a drug trafficking crime [Count 5]. App. 20-24.

In September 2022, Francis filed three motions to suppress. App. 8. He moved to suppress the evidence obtained from his car. *Id.* He also moved to suppress evidence obtained during the alleged protective sweep of an apartment after the search of the car. *Id.* Finally, he moved to suppress statements he made in response to police questioning. *Id.*

10

Regarding the motion to suppress items from the apartment, the Government effectively conceded that motion by filing a response stating that the Government would not introduce that evidence at trial. Add. 8, n.1. Similarly, the Government responded to the motion to suppress statements saying it would not use Francis's statements at trial. *Id.* Correspondingly, the Government stated that it would abandon Counts 3, 4, and 5 of the superseding indictment, which were based on evidence seized during the unconstitutional search of the apartment. *Id.* As a result of those responses and concessions, the district court ultimately ruled that those two motions to suppress were moot. *Id.*

Francis's remaining motion to suppress the evidence seized from his car argued that the search warrant was not justified by probable cause, that the good faith exception did not apply, and that Agent Burke recklessly failed to disclose discrediting information about the drug-dealer-turned-informant, including his prior felony conviction for a crime of dishonesty. App. 25-43.

The Government provided additional discovery in connection with its objection to Francis's motion to suppress evidence from the car. Based on that new discovery, Francis filed an additional motion to suppress cell phone evidence and statements made by Francis. App. 10-11. Specifically, Francis argued that when law enforcement arrested him, seized his cell phone, and questioned him, they

lacked a valid basis for his arrest and that their purported basis, a parole violation, was not supported by legal authority. App. 10-11; Add. 25-26.

The trial court held a hearing, which included a *Franks* hearing, on June 14 and July 12, 2023. App. 149-287, 295-367. Francis filed a supplemental motion to suppress on July 11, 2023, and the Government filed an objection on September 15, 2023. App. 288-294, 368-72. On October 3, 2023, the district court denied Francis's remaining motions to suppress. Add. 8-30. That order, which denied Francis's motion to suppress evidence from the car, is the subject of this appeal.

On November 6, 2024, pursuant to a "C-Plea," Francis pleaded guilty to Count 2 of the Superseding Indictment. App. 396-409. The plea agreement reserved the right for Francis "to appeal the denial of his Motions to Suppress (Docket numbers 35 and 54)." App. 406-7. On April 10, 2024, the district court sentenced Francis to 150-months in prison, as provided in the Plea Agreement. Add. 1-7. Counts 1, 3, 4, and 5 were dismissed on the motion of the Government. Add. 1. Francis filed his notice of appeal on April 18, 2024. App. 417.

## SUMMARY OF ARGUMENTS

This appeal relies on three well-established legal principles regarding search warrant affidavits and informants. First, when an affidavit is based on information from an informant, corroboration of innocent details from the informant may be useful, but, without more, such as the accurate prediction of future conduct, the innocent information does not establish probable cause. *See Illinois v. Gates*, 462 U.S. 213, 245-45 (1983); *Alabama v. White*, 496 U.S. 325, 332 (1990); *Florida v. J.L.*, 529 U.S. 266, 272 (2000). Second, while it is common, and not usually discrediting, for an informant to have a criminal record and to be facing new charges, it is an entirely different matter for an informant to have a felony record for a crime of dishonesty. *See United States v. Tanguay*, 787 F.3d 44, 50 (1st Cir. 2015); *United States v. Rumney*, 867 F.2d 714, 720 (1st Cir. 1989). In that circumstance, the informant's credibility is more likely to be suspect and in greater need of validation. Finally, when law enforcement recklessly excludes information from an affidavit, which would discredit the informant, such as conviction for a felony crime of dishonesty, the good faith exception does not apply. *See United States v. Leon*, 468 U.S. 897, 923 (1984). Applying those three principles here, this Court should reverse the district court's denial of Francis's motion to suppress.

The facts here are not overly complicated. Law enforcement arrested a drug dealer. He wanted to avoid a long prison sentence. Although the informant told an

FBI agent that Francis was his drug supplier, none of the claims of criminal conduct was corroborated. There were no controlled buys from Francis, no surreptitiously recorded incriminating statements by Francis, no text messages between Francis and the informant, nothing of the sort. Nor was there a corroborated prediction of future conduct by Francis. To the contrary, the only information provided by the drug-dealer-turned-informant that could be corroborated was information available to any person with eyes and an internet connection.

Despite the absence of corroborated evidence of criminal conduct or predictions of future conduct, the agent sought and obtained from the magistrate a search warrant for Francis's car, where the informant claimed his drug deals with Francis happened. The car was searched, and cocaine found.

Francis's motion to suppress the cocaine would fail under normal circumstances because the good faith exception shields most searches conducted pursuant to a warrant from attack. However, in discovery and through its own investigation, the defense learned that the FBI agent had omitted from his affidavit, and failed to reveal to the magistrate, that the drug-dealer-turned-informant had been convicted of a felony crime of dishonesty, Falsifying Physical Evidence. Having kept that information from the magistrate, law enforcement is no position to claim good faith reliance on the magistrate's issuance of the search warrant.

14

The motion to suppress was sound and should have been granted. Francis established that the affidavit for the search warrant was lacking probable cause. He explained that the good faith exception does not apply because the agent recklessly or deliberately left out information which discredited the informant. And he showed that, considering the absence of corroborating incriminating information, the absence of any accurate predictions of future behavior, and the omitted information that the informant had a felony conviction for a crime of dishonesty, the affidavit was insufficient to support a finding of probable cause. For these reasons, the district court erred when it denied Francis's motion to suppress.

ARGUMENT: THE DISTRICT COURT ERRED IN NOT GRANTING THE MOTION TO SUPPRESS.

*Standard of Review.*

When the district court holds a *Franks* hearing and a defendant challenges the results, the appellate court "bypass[es] the question of whether [the defendant] made the 'substantial preliminary showing' necessary to invoke a *Franks* hearing,' and instead, 'review[s] *de novo* the district court's ultimate decision to suppress [or not suppress] the evidence obtained pursuant to the warrant at issue.'" *United States v. Lanza-Vázquez*, 799 F.3d 134, 141 (1st Cir. 2015) (quoting *United States v. Tzannos*, 460 F.3d 128, 135-36 (1st Cir. 2006)). Furthermore, "[a]ny antecedent factual findings are reviewed for clear error." *Lanza-Vázquez*, 799 F.3d at 141 (citing *Tzannos*, 460 F.3d at 136).

*The Good Faith Exception Does Not Bar a Challenge to the Sufficiency of the Affidavit for the Search Warrant Because the Law Enforcement Affiant Recklessly Failed to Include Information which Discredited the Informant.*

The Fourth Amendment to the United States Constitution requires that search warrants be supported by probable cause. U.S. Const. amend IV.

Probable cause exists when the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it.

*United States v. Schaefer*, 87 F.3d 562, 565 (1st Cir. 1996) (citations and quotations omitted). The usual remedy for a violation of the Fourth Amendment is suppression. *See United States v. Brunette*, 256 F.3d 14, 19 (1st Cir. 2001). However, when law enforcement relies in good faith on a search warrant obtained from a neutral and detached magistrate, suppression is not warranted. *Leon*, 468 U.S. at 923.

Nevertheless, as first recognized in *Franks v. Delaware*, 438 U.S. 154 (1978), although an "affidavit supporting a search warrant is presumptively valid…a defendant may rebut this presumption and challenge the veracity of the affidavit in a pretrial hearing, 'eponymously called a *Franks* hearing.'" *United States v. Leonard*, 17 F.4th 218, 224 (1st Cir. 2021) (citing *United States v. Gifford*, 727 F.3d 92, 98 (1st Cir. 2013) and quoting *United States v. Barbosa*, 896 F.3d 60, 67 (1st Cir. 2018)). A defendant is entitled to a *Franks* hearing "only if he makes a 'substantial preliminary showing'…that a 'false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth' and that the false statement or omission was 'necessary to the finding of probable cause.'" *United States v. Arias*, 848 F.3d 504, 511 (1st Cir. 2017) (quoting *United States v. McLellan*, 792 F.3d 200, 208 (1st Cir. 2008)).

> At a *Franks* hearing, if a defendant shows by a preponderance of the evidence that the affidavit contains false statements or omissions, made intentionally or with reckless disregard for the truth, and that a finding of probable cause would not have been made without those false statements or

omissions, then the defendant is entitled to the suppression of the evidence obtained under that warrant.

*Leonard*, 17 F.4th at 224 (quotation and citation omitted). Furthermore, because the exclusionary rule is premised on deterring police misconduct, *Leon*, 468 U.S. at 906,

> Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth.

*Id.* at 923 (citing *Franks,* 438 U.S. 154). *See also United States v. Vigeant*, 176 F.3d 565, 571-72 (1st Cir. 1999); *United States v. Fuccillo*, 808 F.2d 173, 178 (1st Cir. 1987) ("Suppression is still an appropriate remedy when the officers were reckless in preparing their affidavit.") (cleaned up, quotation and citation omitted). In other words, police cannot claim good faith reliance on a magistrate's determination of probable cause when the police have recklessly failed to provide the magistrate with important information.

Francis met the standard for a *Franks* hearing in this case. He raised the *Franks* issue in his motion to suppress evidence seized from the car. App. 25-43. He specifically stated that the informant had been convicted of the New Hampshire felony of Falsifying Physical Evidence and that Agent Burke left that fact out of the affidavit. App. 25, 29, 41. Francis requested an evidentiary hearing, App. 37, 43, and despite the Government's objection to the hearing, App. 10, 84, 98-103,

the district court granted that request. App. 12; Add. 9. In so doing, the district court effectively acknowledged that Francis made at least a "substantial preliminary showing" that "a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth and that the false statement or omission was necessary to the finding of probable cause." *Leonard*, 17 F.4th at 224 (quotations and citations omitted). As the district court judge himself said, "… you claim there was a material omission deliberately or recklessly made . . . that would detract from the – negate the probable cause if included…. That's what we are here for." App. 168.  Finally, the district court's denial of the defense motion was not based on the good faith exception but rather on the court's finding that the affidavit, even considering the omitted information, provided probable cause. Add. 8-30.

*The District Court Denied the Motion to Suppress Because It Found the Affidavit Was Sufficient Even After Considering the Omitted Discrediting Information.*

The district court denied the motion to suppress, finding that "even upon a reformed affidavit, there was a fair probability that contraband or evidence of a crime would be found in defendant's car." Add. 25. The district court found that: (1) "the affidavit sufficiently establishes the probable veracity of the CW [Cooperating Witness]"; (2) "law enforcement corroborated several aspects of the information provided by the CW, as could be done practically"; (3) "the

19

information omitted, while not irrelevant, does not meaningfully undermine the substantive information included in the affidavit"; and, (4), "Special Agent Burke, a ten-year veteran of the FBI, assessed the significance of the information provided by the CW based on his own professional experience, skill, and knowledge" and did not "harbor[] any doubts at all." Add. 18, 20, 22, 24.

Respectfully, the district court was wrong.

*Even Before Considering the Omitted Information About the Informant's Dishonesty, the Affidavit Did Not State Sufficient Facts on Its Face to Support a Finding of Probable Cause.*

The affidavit described two motor vehicle stops of the informant, both resulting in the seizure of large quantities of controlled substances. S.App. 2-3. The affidavit also described an interview with law enforcement following another arrest after the two prior motor vehicle stops. In that interview, the informant claimed that the drugs seized in the first stop had been provided by a member of the Gangster Disciples gang, who in turn said the drugs provided to him came from Francis. S.App. 3-4. The informant further claimed that following that gang member's July 2023 arrest, Francis contacted the informant to say he would be directly supplying the drugs in the future. The informant said the drugs found after his second arrest were provided directly by Francis. S.App. 4. The informant went on to claim that he got drugs from Francis on a "daily basis," specifying purported quantities and prices. S.App. 4. The informant alleged that he met Francis in

Manchester, sometimes near the intersection of Rimmon and Putnam Streets, and that he believed Francis lived nearby. S.App. 4. The informant said he would meet personally with Francis and described the make, model, and wheels of Francis's car, that the controlled substances would be in the passenger compartment or trunk of the car, and that Francis sometimes had a gun with him. S.App. 4-5.

Agent Burke corroborated a few of these facts. He confirmed that a member of the Gangster Disciples had been arrested in July of 2023. S.App. 4. He confirmed that Francis was associated with a residence in the general area where the informant claimed to have met Francis to pick up drugs. S.App. 5. And Agent Burke corroborated the make and model of Francis's car. S.App. 5.

However, Agent Burke did not corroborate any instance of criminal activity by Francis. Nor did he say that the informant accurately predicted some future behavior of Francis, criminal or otherwise. Similarly, Agent Burke did not provide any independent verification that the informant and Francis had meetings or communications, much less committed a crime together. There are no text messages, no recorded conversations, no statements from any other witnesses who saw the two together, or anything of the kind, which might confirm that the informant was meeting with Francis or receiving drugs from him.

Furthermore, there was no claim in the affidavit that the informant's statements regarding Francis should be accepted because the informant provided

21

reliable information in the past. To the contrary, the affidavit was completely silent as to any prior information received from the informant. The only "track record" of the informant was his own repeated criminal conduct, in the form of arrests for two serious drug crimes and thus his motive to curry favor with law enforcement. S.App. 3-4.

A few corroborated innocent facts and entirely uncorroborated claims of criminal conduct do not establish probable cause. "Probable cause for a search exists where this is a fair probability that evidence of a crime will be found in a particular place." *United States v. Maglio*, 21 F.4th 179, 185 (1st Cir. 2021) (quotation and citation omitted) (cleaned up). In determining whether the affidavit establishes a fair probability that evidence will be found in a particular place, a court must consider "the totality of the circumstances stated in the affidavit." *United States v. Tiem Trinh*, 665 F.3d 1, 10 (1st Cir. 2011) (quotation and citation omitted) (cleaned up). Where "the affidavit at issue mainly relies on the informing [confidential source's] reports to investigating authorities" this Court applies a "nonexhaustive list of factors to examine the affidavit's probable cause showing," including, among others,

> (1) whether the affidavit establishes the probable veracity and basis of knowledge of persons supplying hearsay information; (2) whether an informant's statements reflect firsthand knowledge; (3) whether some or all of the informant's factual statements were corroborated wherever reasonable practicable (*e.g.*, though police surveillance); and (4) whether a law enforcement affiant assessed, from his professional standpoint, experience,

and expertise, the probable significance of the informant's provided
information.

*Tiem Trinh*, 665 F.3d at 10 (quotations and citations omitted) (cleaned up).

Furthermore, because "none of these factors is indispensable, a stronger showing

of supporting evidence as to one or more factors may effectively counterbalance a

lesser showing as to others." *Id.* (quotation and citation omitted). However, when

"the police act on information from a confidential informant, 'law enforcement

<u>must</u> provide some information from which a court can credit the informant's

credibility.'" *United States v. Gonsalves*, 859 F.3d 95, 103 (1st Cir. 2017) (quoting

*United States v. White*, 804 F.3d 132, 136 (1st Cir. 2015)) (underline added). A

review of each of these factors shows that the affidavit for the search of Francis's

car did not provide probable cause.

### The Affidavit Did Not Establish the Probable Veracity and Basis of Knowledge of the Informant.

Agent Burke admitted that the informant had no track of being a reliable

source of information. App. 199, 335-36. He had never provided information of

criminal conduct in prior cases which had been verified. App. 199. Nor did he do

so in this case.

Similarly, Agent Burke acknowledged that in many cases, a cooperating

witness makes a "controlled buy" observed by law enforcement. App. 198. The

usual scenario is that agents search the informant to make sure he has no drugs,

23

then provide him money to buy drugs from the suspect, then law enforcement observes the controlled buy from a distance, sometimes even recording it. *See, e.g.*, *United States v. Carmona*, 103 F.4th 83, 87 (1st Cir. 2024); *United States v. Sylvestre*, 78 F.4th 28, 31-35 (1st Cir. 2023). The affidavit in this case is completely devoid of such evidence.

In addition, from Agent Burke's testimony, it appears that there were other means available to determine whether the informant was telling the truth. The informant claimed that he arranged meetings with Francis by phone and text message. S.App. 4. Such claims could be verified to support an informant's credibility. In other cases, this Court has recognized that confirmation of electronic communications between the informant and suspect helps buttress the informant's credibility. *See, e.g.*, *Carmona*, 103 F.4th at 90-91; *United States v. Simpkins*, 978 F.3d 1, 7-8 (1st Cir. 2020); *United States v. Ackies*, 918 F.3d 190, 204 (1st Cir. 2019). Agent Burke acknowledged as much. App. 185-86. He testified that law enforcement often looks at evidence of phone contact and text messages between an informant and a suspect to buttress the informant's claims. App. 185-86. Yet there is no such information in the affidavit in this case. S.App. 3-6; App. 196-97.

The informant also alleged that he sometimes met Francis in the vicinity of Putnam and Rimmon streets in Manchester. S.App. 5. The trial court credited law enforcement for corroborating that Francis resided at 231 Thornton Street, "close

24

to where the CI said his drug transactions with Francis were conducted." Add. 10. Despite this information, law enforcement did not obtain any surveillance video, GPS records, or other evidence that could have been used to evaluate the informant's claims about having met Francis in a particular location and confirmed these alleged meetups in west Manchester.

Finally, while cases have recognized that predictions of future behavior of a suspect may indicate an informant is reliable and has a sound basis of information, *Tiem Trinh*, 665 F.3d at 12; *United States v. Greenburg*, 410 F.3d 63, 69 (1st Cir. 2005); *United States v. Link*, 238 F.3d 106, 110-11 (1st Cir. 2001), the affidavit in this case lacked any such predictions. If Francis was selling drugs from his car, typically from a particular location, the agents could have surveilled the location for such activity. The affidavit here does not contain such a prediction of future behavior.

*The Affidavit Did Not Establish that the Informant's Statements Reflected Firsthand Knowledge.*

In its denial of the motion to suppress, the district court wrote that the "information provided by the CW was detailed and comprehensive," specifically, "the make, model and identifying details of defendant's car, the location of the reported drug deals, how his meet-ups with Francis were arranged, where Francis would store drugs to be exchanged at the meet-ups, the nearby location of the

defendant's residence, the amounts of drugs the CW purchased from Francis, and the prices at which the drugs were purchased." Add. 20.

However, the informant's claims of firsthand knowledge do not establish that he actually had any firsthand knowledge. As Francis emphasized in his motion to suppress and at oral argument, the information provided by the informant was innocuous, publicly available information, or allegations of uncorroborated, past criminal activity. Law enforcement only corroborated innocent facts: they ran a criminal background check on Francis, ran a records check for vehicles registered to Francis, identified a residence associated with Francis, and confirmed that that address was in the vicinity of the urban intersection where the informant claimed to meet Francis. S.App. 5. None of these claims, standing alone, establishes any firsthand knowledge of past or future criminal activity. Moreover, Agent Burke acknowledged that publicly available information is less reliable than information not generally available to the public which might indicate special, or firsthand, knowledge. App. 184-85. This court, of course, has said the same. *See* pages 27-31, *infra*.

Both the affidavit and Agent Burke's testimony detailed the informant's claim that he had daily or near daily meetups with Francis. S.App. 4; App. 169-70. Yet, law enforcement never witnessed any of these alleged meetings and the affidavit does not describe any other witnesses to such meetings. App. 196. Nor

26

was there any other evidence of the claimed meetings, such as security video collected from a nearby business showing an alleged meeting. In short, the affidavit contains claims by the informant that Francis had engaged in criminal conduct, but the affidavit does not actually establish that the informant had any firsthand knowledge of such conduct.

*The Affidavit Only Described Corroboration of a Few Innocent Facts and Did Not Provide Corroboration of Any Criminal Conduct or Future Conduct of Francis, Whether by Surveillance or Otherwise.*

This Court has been careful to distinguish between corroboration of innocent facts, which may have some value, and corroboration of claims of criminal conduct or predictions of future behavior. "Corroboration of even innocent activity reported in the tip may support a finding of probable cause" because "the activity might come to appear suspicious in light of the initial tip." *Greenburg*, 410 F.3d at 69 (quotation and citation omitted). "But the information must be at least marginally useful in establishing that criminal activity is afoot." *United States v. Ramírez-Rivera*, 800 F.3d 1, 29 (1st Cir. 2015). *See also White*, 496 U.S. at 332 (explaining that it is "also important that…'the anonymous tip contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.'") (quoting *Gates*, 462 U.S. at 245).

27

Here, law enforcement merely corroborated publicly available, innocuous information. The most detailed information the informant provided, the color, make, model, and rims of the Defendant's car, is information that any person on the street could offer. This "kind of information, indeed, the kind that is immediately visible to anyone who passes the [car], is not -- without more -- useful information when it comes to making a probable cause determination." *Ramírez-Rivera*, 800 F.3d at 28. *See also J.L.*, 529 U.S. at  272 ("An accurate description of a subject's readily observable location and appearance …does not show that the tipster has knowledge of concealed criminal activity."); *United States v. Tuter*, 240 F.3d 1292, 1297-98 (10th Cir. 2001) (concluding that the "minimal corroboration of innocent, readily observable facts" like the defendant's "appearance, residence, [and] cars" is "insufficient to establish the veracity or reliability" of an informant).

The informant's allegation that the drugs were stored either in the passenger compartment or the trunk, App. 170, is similarly unhelpful in strengthening the informant's credibility because the claim merely alleges that drugs were somewhere in the vehicle. The trunk or the passenger compartment are, of course, the most likely place for anyone to store items in a car. Without any more specific details about where in the passenger compartment or trunk items were located, or what those compartments looked like, the informant's claim was nothing more than a generalized allegation that Francis had drugs somewhere in his car, not the

28

sort of information that is "so specific and specialized that it could only be known to a person with inside information." *Gifford*, 727 F.3d at 100. In addition, the informant's claims about the interior of the car—that Francis allegedly kept a gun there and that sometimes the exchanges took place there, were not corroborated.

The innocent facts provided by the informant here fall short of the kind of detail this court has found to be sufficient in other cases. The case of *United States v. Brown*, 500 F.3d 48, 55 (1st Cir. 2007), is illustrative, even though the issue there concerned reasonable suspicion rather than the higher standard of probable cause. In *Brown*, this Court held that the informant's information was reliable and police adequately corroborated the information, where the informant "specified the type and quantity of the drugs in transit, the transporter's method of travel, what bus line he would patronize, and the name of one of his confederates (Peter Tanguay)," as well as "the date, time, and place of the suspect's arrival in Portland, the identity of the person who would meet him there, the exact vehicle that would be deployed, and the suspect's intended destination," in short, a tip "sufficiently laden with details to demonstrate…[an] inside knowledge of the events that he was describing." *Brown*, 500 F.3d at 55. Most importantly for the purposes of comparison here, law enforcement <u>then corroborated</u> that prediction. *Id.* at 56.

Here, by contrast, the informant provided no predictions of future behavior and Agent Burke did nothing but confirm publicly available information about

Francis. Unlike the police in *Brown*, Agent Burke did not "act with due diligence to reduce the risk of a mendacious or misguided informant." *Brown*, 500 F.3d at 56 (citing *United States v. Winchenbach*, 197 F.3d 548, 556 (1st Cir. 1999)).

Other cases from this circuit are similar. For example, in *United States v. Croto*, 570 F.3d 11 (1st Cir. 2009), the informant gave explicit details about firearms possessed by the defendant. *Id.* at 14-15. *See also United States v. Strother*, 318 F.3d 64, 68-69 (1st Cir. 2003) (specific details supplied by the informant, alongside independent corroboration, supported the existence of probable cause). *Cf. United States v. Capozzi*, 347 F.3d 327, 334 (1st Cir. 2003) (probable cause bolstered because informant's information was "not publicly available").

Notably, in a case with more detail than provided by Agent Burke's informant, this Court still found an affidavit to be insufficient. In *Gifford*, the police not only obtained motor vehicle records, but also obtained a local police report detailing a visit to the suspect's house, as well as utility records indicating higher than normal electrical usage. *Gifford,* 727 F.3d at 100. Even with that greater level of corroboration, however, this Court found an insufficient basis to determine the informant's reliability using the *Tiem Trinh* factors. *Id.*

Cases from other circuits support the view that the corroboration here was insufficient. *See United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991)

(finding insufficient probable cause where "only several innocent details had been

corroborated by the police" and where there "was neither surveillance nor

observation" of suspicious activity); *United States v. Weaver*, 99 F.3d 1372, 1379

(6th Cir. 1996) (no probable cause where police "undertook no substantive

independent investigative actions to corroborate his informant's claims, such as

surveillance…or a second controlled purchase"); *United States v. Hall*, 113 F.3d

157, 159 (9th Cir. 1997) ("innocent details do even less to corroborate a tip from a

man known to have made a false report to police"); *United States v. McLeroy*, 584

F.2d 746, 748 (5th Cir. 1978) ("Reasonable suspicion requires more than this

minimal corroboration of innocent details").

*The Agent Claimed to Have Assessed the Probable Significance of the Informant's
Statements, But in Reality, the Agent Withheld Information Which Would have
Discredited the Informant.*

The final *Tiem Trinh* factor, the agent's assessment of the informant's

statements, cannot be considered without recognizing that the agent discounted

discrediting information which he should have revealed to the magistrate. As

Agent Burke testified, he performed a criminal record check on the informant,

App. 192, and would have noticed his felony conviction for falsifying evidence.

App. 192, 196. Agent Burke was likewise aware of the informant's prior arrests,

App. 323, reviewed reports of those arrests, App. 324-25, and included details

from those reports in his affidavit. App. 325-26. Yet, he did not inform the

31

magistrate that the informant had been deceptive and that officers described him as deceitful. App. 326, 331. He failed to provide this information despite his admission that those factors would be important in assessing the informant's reliability. App. 187. His only explanation was that he "didn't feel like it was necessary." App. 186-87, 196.

The district court's response to these arguments was that "[b]est practices might counsel including the omitted information, but failure to include it did not undermine the magistrate judge's assessment" because "[n]either the CW's prior criminal conviction, nor the CW's dishonesty as described in the July 30 police report are sufficient to undermine the probable cause finding." Add. 17.

The district court was mistaken in its conclusion. The court failed to give the omitted discrediting information the weight it deserved. As this Court has said, "factors like an informant's prior criminal record and desire to advantage himself with respect to pending criminal charges are to be considered in explaining his reliability." *Brown*, 500 F.3d at 55. And while "such considerations are not dispositive…the source's general credibility <u>must</u> be considered" and "all that the law requires is that, when all pertinent considerations are weighed, the information reasonably appears to be reliable." *Id.* (underline added). Agent Burke usurped the magistrate judge's role, however, when he unilaterally decided that the informant's

criminal conviction for dishonesty and history of lying to law enforcement was irrelevant. App. 194-96.

An agent providing an affidavit to a magistrate in support of a request for a search warrant should, of course, inform the magistrate of the agent's opinion of the informant's credibility and the basis for that opinion, but that does not mean that the decisions regarding credibility and reliability belong to the agent. More to the point, the agent is not supposed to withhold discrediting information from the magistrate. The decision of whether the affidavit is sufficient to establish probable cause belongs to the magistrate, not the agent. Yet, Agent Burke said he decided against including the informant's criminal history because he did not think it was necessary. App. 194-96. He also admitted that he does "a lot of assessment himself" and makes "decisions on whether someone's telling the truth." App. 183, 200. This is the opposite of what the Supreme Court has instructed: the "point of the Fourth Amendment…is not that it denies law enforcement the support of the usual inferences which reasonable men drawn from evidence" but that its "protection consists in <u>requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime</u>." *Johnson v. United States*, 333 U.S. 10, 13-14 (1948) (underline added). *See also United States v. Stewart*, 337 F.3d 103, 107 (1st Cir. 2003) ("Meticulous compliance involves more than an agent's

own judgment as to the ultimate importance of a piece of information to a judgment of probable cause" and the agent should "ask the further question, 'Is this information so trivial, remote or irrelevant that no reasonable official could assign it weight in coming to a decision to issue the warrant?'" because "[u]nless an affirmative answer can be given, the information should be included – even if, in context, its weight seems too slight to tip the balance away from a finding of probable cause.").

Furthermore, there are good reasons to question Agent Burke's assessment of an informant's credibility. Agent Burke testified that he was more likely to believe someone who had been caught twice with drugs than a random citizen. App. 199-200. But the Supreme Court and this Court have repeatedly said the opposite. *See Gates*, 462 U.S. at 233-34 ("if an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – we have found rigorous scrutiny of the basis of his knowledge unnecessary") (citation omitted); *United States v. Campbell*, 732 F.2d 1017, 1019 (1st Cir. 1984) ("In substitution for a track record of reliability is the fact that he was not a professional informant, but a private citizen with no known criminal record or other criminal contacts, who came forward on his own. Under such circumstances the informant's story may be more easily accepted, and we believe the magistrate justified in doing so here"); *United States v. Scalia*, 993

34

F.2d 984, 987 (1st Cir. 1993) (same); *Croto*, 570 F.3d at 14 (same); *Tanguay*, 787 F.3d at 50 ("the statements of a law-abiding eyewitness to a crime are generally considered reliable without further corroboration"); *Schaefer*, 87 F.3d at 566 ("information provided by ordinary citizens has particular value in the probable cause equation").

*Agent Burke's Conduct Was Either "Reckless" or "Knowing."*

Finally, Agent Burke's omissions were not unintended mistakes. "To prove reckless disregard for the truth, the defendant must prove that the affiant 'in fact entertained serious doubts as to the truth' of the allegations," however, recklessness "may be inferred 'from circumstances evincing obvious reasons to doubt the veracity of the allegations.'" *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002) (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984)). Here, Agent Burke acknowledged that the affidavit for the search warrant depended on the credibility of the informant. App. 189. He admitted that the informant was substantially motivated after his arrests to do something to help himself. App. 183-84, 191. He even acknowledged that a conviction for falsifying physical evidence would be "pretty important" in assessing credibility. App. 187. In these circumstances, Agent Burke was more than negligent when he omitted the evidence of the informant's record from the affidavit. He was reckless.

The district court gave weight to Agent Bruke's assessment of credibility and wrote that there "is no evidence suggesting that Burke harbored any doubts at all – let alone serious doubts – about the veracity of the affidavit, or that he thought that either of the omitted facts were significant in assessing probable cause." Add. 24. Yet Burke testified that he would want to know about an informant's attempts to deceive law enforcement and that a conviction for falsifying physical evidence would be "pretty important" in assessing the informant's credibility. App. 186-87. He said that, in other affidavits, he has described informants as "credible," but he did not do so here. App. 336. If he described other informants as "credible" in other affidavits, why would he not describe the informant in this case as "credible" unless he harbored doubts.

As the *Gifford* case makes clear, when one piece of information is particularly important in the probable cause determination, and the omitted information "alter[s] in significant ways the weight" given to that information and "was critical to the probable cause determination, [the court] may infer recklessness." *Gifford*, 727 F.3d at 101. Similarly, recklessness should be inferred where Agent Burke admitted the affidavit for the search warrant depended on the informant's credibility, App. 189, but omitted information about the informant's credibility, namely his felony conviction for dishonesty and his history of lying to law enforcement, from the affidavit.

36

The district court further erred when it discounted the significance of a felony conviction in the probable cause analysis. The court cited a number of cases, but those cases either support Francis's argument or do not address the circumstances of Francis's case.

The district court cited *Tanguay*, where this Court said that the informant's conviction for uttering a false prescription "is surely relevant to the decisional calculus." *Tanguay*, 787 F.3d at 50. In that respect, *Tanguay* favors Francis. Moreover, the Ninth Circuit decision that the *Tanguay* court cited to for the proposition that "[e]ven a prior conviction for a crime of dishonesty is not always dispositive of a witness's credibility," *United States v. Meling*, 47 F.3d 1546 (9th Cir. 1995), noted that there was "considerable independent evidence" in addition to the dishonest informant's claims. *Tanguay*, 787 F.3d at 50; *Meling*, 47 F.3d at 1555. There was no such "considerable independent evidence" here. Furthermore, the *Tanguay* court itself explained that because of the informant's history of dishonesty, "that red flag may have been sufficient to create a duty of further inquiry." *Tanguay*, 787 F.3d at 53 (citing *United States v. Chesher*, 678 F.2d 1353, 1361-62 (9th Cir. 1982)). But here, law enforcement failed in that duty by merely accepting the informant's allegations and running cursory checks of publicly available information.

The district court also cited to *Rumney,* but the informant's criminal record in *Rumney* was <u>not</u> for a crime of dishonesty. *Rumney*, 867 F.2d at 720-21. Likewise, the district court's citation to *United States v. Belton*, 414 F. Supp. 2d 101 (D.N.H. 2006), *aff'd*, 520 F.3d 80 (1st Cir. 2008), is not on point here because that case involved an informant with a criminal history but not a conviction for a crime of dishonesty. Moreover, law enforcement in that case had other independent corroboration of the allegations. *Belton*, 414 F. Supp. 2d at 105. As detailed above, law enforcement here made no attempts to independently corroborate the informant's allegations except to confirm publicly available details.

Finally, the district court in this case cited the opinion from another judge of the New Hampshire district court in *United States v. Tanguay*, 907 F. Supp. 2d 165 (D.N.H. 2012), for the proposition that dishonest informants may still provide a basis for probable cause. Add. 24. However, the district court decision in *Tanguay* provided a caveat by noting that it "is only in the absence of 'additional evidence…to bolster the informant's credibility or the reliability of the tip' that 'an informant's criminal past involving dishonesty is fatal to the reliability of the informant's information, and his/her testimony cannot support probable cause.'" *Tanguay*, 907 F. Supp. 2d at 183-84 (quoting *United States v. Elliott*, 322 F.3d 710, 716 (9th Cir. 2003). The situation described by the district court judge in *Tanguay* is the situation here: there was no additional evidence to bolster the informant's

credibility besides confirmation of innocuous, publicly available information. Thus, the informant's criminal past of dishonesty was fatal to his reliability.

CONCLUSION

Francis does not claim that dishonest informants or those with criminal histories can never provide information which establishes probable cause. Rather, it is that when the evidence comes entirely from an informant with a history of lying and every reason to continue to lie, law enforcement must do more than merely confirm information that any layperson could know from walking the streets of Manchester. The district court erred in concluding that the reformed affidavit provided probable cause to search Francis's car.

Francis respectfully requests that this Court vacate his conviction, reverse the denial of his motion to suppress, and remand for further proceedings.

Date: September 6, 2024

/s/ *Richard Guerriero*
Richard Guerriero
1st Circuit Bar ID 1164673
Oliver Bloom
1st Circuit Bar ID 1211240
Lothstein Guerriero, PLLC
39 Central Square, Suite 202
Keene, NH 03431
(603) 352-5000
richard@nhdefender.com
oliver@nhdefender.com

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)

I, Richard Guerriero, hereby certify that the foregoing brief of Appellant

Michael Francis complies with the type-volume limitation of FRAP 32(a)(7)(B):

1. This brief contains 7351 words, not including the parts of the brief

exempted by FRAP 32(a)(7)(B)(iii).

2. This brief has been prepared in a proportionally spaced typeface using

Microsoft Word for Office 365 (2024) in 14-point Times New Roman.

/s/ *Richard Guerriero*
Richard Guerriero
1st Circuit Bar ID 1164673
NH Bar ID 10530

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was forwarded by

electronic mail through the ECF system on September 6, 2024, to Assistant United

States Attorneys David Lieberman and Aaron Gingrande, of the United States

Attorney's Office, 55 Pleasant Street, 4th Floor Concord, NH 03301. A copy of the

brief was mailed by U.S. Mail to Appellant, Michael Francis #63480-509, USP

Canaan, PO Box 300, Waymart, PA 18472.

Filed September 6, 2024.

/s/ *Richard Guerriero*
Richard Guerriero
1st Circuit Bar ID 1164673
NH Bar ID 10530

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

NO. 24-1386
_____

**UNITED STATES,**
**APPELLEE**

**v.**

**MICHAEL FRANCIS,**
**DEFENDANT - APPELLANT**
_____

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE
_____

**ADDENDUM OF MICHAEL FRANCIS**
_____

Richard Guerriero
1st Circuit Bar ID 1164673
Oliver Bloom
1st Circuit Bar ID 1211240
Lothstein Guerriero, PLLC
39 Central Square, Suite 202
Keene, NH 03431
(603) 352-5000
richard@nhdefender.com
oliver@nhdefender.com

## <u>Table of Contents</u>

2024-04-10 United States District Court Judgment (doc. no. 108)
…………………………………………………………………………………..1
2023-10-13 United States District Court Order (doc. no. 87)
.…………………………………………………………………………………..8

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
USDC-NH (8/21)    Sheet 1

# UNITED STATES DISTRICT COURT
### District of New Hampshire

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| Michael Francis | Case Number:  21-cr-153-01-PB |
| | USM Number:  63480-509 |
| | Richard Guerriero, Esq. |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    2s of the Superseding Indictment

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC §841(a)(1), 841(b)(1)(B) | Possession with Intent to Distribute 500 Grams or More of Cocaine. | 9/1/2021 | 2s |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s) 1s, 3s, 4s, 5s of Superseding Indictment ☐ is ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

4/10/2024
Date of Imposition of Judgment

/s/ Paul J. Barbadoro
Signature of Judge

Paul J. Barbadoro U.S. District Judge
Name and Title of Judge

4/10/2024
Date

**ADDENDUM PAGE 1**

AO 245B (Rev. 09/19) Judgment in Criminal Case
USDC-NH (8/21)    Sheet 2 — Imprisonment

Judgment — Page  2  of  7

DEFENDANT:   Michael Francis
CASE NUMBER:   21-cr-153-01-PB

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

One Hundred Fifty (150) months.

☑ The court makes the following recommendations to the Bureau of Prisons:
The Court recommends that the defendant participate in substance abuse treatment while in Bureau of Prisons' custody. The Court recommends that the defendant participate in educational or vocational training while in Bureau of Prisons' custody. The Court recommends participation in the Bureau of Prisons' intensive drug treatment program (RDAP) while in Bureau of Prisons' custody.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m. ☐ p.m.  on _____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**ADDENDUM PAGE 2**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
USDC-NH (8/21)        Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___7___

DEFENDANT:   Michael Francis
CASE NUMBER:   21-cr-153-01-PB

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Four (4) years.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 72 drug tests per year of supervision.
        ☐ The above drug testing condition is suspended, based on the court's determination that you
            pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of
        restitution. *(check if applicable)*
5.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as
        directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you
        reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**ADDENDUM PAGE 3**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
USDC-NH (8/21)    Sheet 3A — Supervised Release

Judgment—Page ___4___ of ___7___

DEFENDANT:  Michael Francis
CASE NUMBER:  21-cr-153-01-PB

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____    Date  _____

**ADDENDUM PAGE 4**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
USDC-NH (8/21)          Sheet 3D — Supervised Release

Judgment—Page __5__ of __7__

DEFENDANT:  Michael Francis
CASE NUMBER:  21-cr-153-01-PB

## SPECIAL CONDITIONS OF SUPERVISION

1. You must participate in a substance use treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). You must pay for the cost of treatment to the extent you are able, as determined by the probation officer.

2. You must not use or possess any controlled substances without a valid prescription. If you do have a valid prescription, you must disclose the prescription information to the probation officer and follow the instructions on the prescription.

3. You must submit to substance abuse testing to determine if you have used a prohibited substance. You shall pay for the cost of testing to the extent you are able, as determined by the probation officer. You must not attempt to obstruct or tamper with the testing methods.

4. You must not use or possess alcohol.

5. You must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic marijuana, bath salts, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption, except with the prior approval of the probation officer.

6. You must not go to, or remain at, any place where you know controlled substances are illegally sold, used, distributed, or administered without first obtaining the permission of the probation officer.

7. You must participate in a gambling addiction treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). You must pay for the cost of treatment to the extent you are able, as determined by the probation officer.

8. You must not engage in any form of gambling (including, but not limited to, lotteries, online wagering, sports betting) and you must not enter any casino or other establishment where gambling is the primary purpose (e.g., horse racetracks, off-track betting establishments).

9. You must not communicate, or otherwise interact, with any known member of the Gangster Disciples, without first obtaining the permission of the probation officer.

10. You must participate in a cognitive-behavioral treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). Such programs may include group sessions led by a counselor or participation in a program administered by the probation office. You must pay for the cost of treatment to the extent you are able, as determined by the probation officer.

11. You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030 (e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
USDC-NH (8/21)    Sheet 5 — Criminal Monetary Penalties

Judgment — Page __6__ of __7__

DEFENDANT: Michael Francis
CASE NUMBER: 21-cr-153-01-PB

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| 1 | | | |

| | | | |
|---|---|---|---|
| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**ADDENDUM PAGE 6**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
USDC-NH (8/21)    Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:  Michael Francis
CASE NUMBER:  21-cr-153-01-PB

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ __100.00__ due immediately, balance due

   ☐ not later than _____ , or
   ☐ in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
   _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
   _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
   term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
   imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the Clerk, U.S. District Court, 55 Pleasant Street, Room 110, Concord, N.H. 03301. Personal checks are not accepted.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**ADDENDUM PAGE 7**

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                        Case No. 1:21-cr-153-1-SM
                                 Opinion No. 2023 DNH 126

Michael Francis

**O R D E R**

Michael Francis has been indicted on three counts of conspiracy to, and possession with intent to, distribute cocaine, fentanyl, and methamphetamine, as well as two firearms charges. Francis moves to suppress (1) evidence obtained in the search of his vehicle; and (2) evidence obtained during his arrest on September 1, 2021.[1] In his motion to suppress evidence obtained during the search of his vehicle, Francis challenges the veracity of statements made in the affidavit in support of

---

[1] In addition, defendant also moves to suppress the introduction of evidence gathered by law enforcement during a search of his apartment on September 2, 2021. The government has agreed that it will not seek to introduce such evidence at trial, will move to dismiss Counts 3, 4, and 5 of the indictment (all of which are based on evidence seized from the apartment), and asks the court to deny the motion as moot.

Finally, defendant moves to suppress statements he made on September 7, 2021. Edwards v. Arizona, 451 U.S. 477 (1981). The government agrees that it will not use those statements at trial, and asks the court to deny the motion as moot.

**ADDENDUM PAGE 8**

the warrant, arguing for a hearing under <u>Franks v. Delaware</u>, 438
U.S. 154, 155 (1978).

Over the government's objections, the court held a combined
<u>Franks</u> and suppression hearing on June 14, 2023, and July 12,
2023.  Having considered the evidence presented at the hearing,
as well as the motions, and the parties' supporting memoranda,
both motions to suppress are denied.

## Factual Background

Michael Francis is alleged to be a member of the Gangster
Disciples criminal street gang.  At the time of the events
relevant to this prosecution, he was an active state parolee.
The conditions of his parole required Francis to agree to
searches of his person, property, and possessions, as requested
by a parole officer; that he would obtain his parole officer's
permission before changing residences; and that he would not
associate with other parolees.

1.  <u>Cooperating Witness ("CW")</u>

A cooperating witness ("CW") provided information to law
enforcement officers during a post-arrest interview regarding
Francis's alleged criminal activity.  The witness had been
arrested on warrants relating to two prior motor vehicle stops

**ADDENDUM PAGE 9**

(on June 13, 2021, and July 30, 2021), both of which led to the
seizure of a large amount of drugs.  During his August 19, 2021,
interview, the CW admitted to possessing the drugs seized during
the June and July motor vehicle stops, and admitted that he
intended to distribute those drugs.  He also provided
significant information about his drug suppliers.

The CW reported that the drugs seized during the June 13
stop were provided to him by Ryan Call, a member of the Gangster
Disciples whom the CW had met in prison, and with whom he had
maintained a relationship.  The CW said that Call informed him
that the drugs came from Michael Francis, another Gangster
Disciples member.  After Call was arrested in the early part of
July, 2021, the CW said he was contacted by Francis, who told
the CW that he, Francis, would be his supplier going forward.
The drugs recovered during the July 30 motor vehicle stop had
been provided by Francis, said the CW.

In his post-arrest interview, the CW detailed the price and
quantity of drugs he received regularly from Francis, and
described the locations where those drug transactions took
place. One location, according to the CW, was near Rimmon Street
and Putnam Street, in Manchester, close to where the witness
believed Francis lived.  The CW said that Francis met with him

**ADDENDUM PAGE 10**

personally to conduct the transactions.  He described in detail
the vehicle Francis drove (a Honda Accord), and reported that
Francis routinely kept a pistol between the driver's seat and
center console of the vehicle.

2.   Law Enforcement Corroboration of CW's Information

Following their interview with the CW, law enforcement
officers corroborated that Ryan Call (the CW's initial supplier)
had been arrested in early July, 2021, and remained incarcerated
at the time of the August interview.  Officers also conducted a
records check of vehicles registered to Francis, which confirmed
that Francis's car matched the Honda Accord described by the CW,
and Francis's parole officer confirmed that he regularly used
that vehicle.[2]

In addition, using a law enforcement database,
investigators corroborated that Francis resided at 231 Thornton
Street, in Manchester,[3] close to where the CI said his drug
transactions with Francis were conducted.  On August 20, 2021,

_____

[2]   The vehicle was registered to 73 Schiller St., Apt. 2, in
Manchester, which was the address that Francis had given to his
parole officer as his residence.

[3]   Francis had not reported this address to his parole officer
as his current residence.

**ADDENDUM PAGE 11**

officers set up a surveillance operation at 231 Thornton Steet.
They observed a person in the rear parking lot of the residence,
next to a Honda Accord.  Based on his physical characteristics,
that person appeared to be Michael Francis.  Subsequent
surveillance conducted at 231 Thornton Street resulted in
further observations of Francis and/or the Honda Accord.


    Finally, investigators determined that Francis was a
convicted felon, federally prohibited from possessing any type
of firearm.


    3.    <u>Warrant to Search Vehicle</u>

    On August 25, 2021, FBI Special Agent Ryan Burke applied
for a warrant to search the Honda Accord.  That application was
based primarily on information obtained from the CW, as well as
law enforcement's corroboration of that information.  The
affidavit in support of the warrant was signed by Burke.


    A search warrant was issued by the magistrate judge on
August 25, 2021.  She found probable cause to believe that a
search of Francis's car would result in evidence of criminal
activity.  The warrant was executed on September 1, 2021.


**ADDENDUM PAGE 12**

4. <u>September 1, 2021, Arrest</u>

On September 1, 2021, law enforcement agents again conducted surveillance of the Thornton Street apartment (where Francis's car was parked in the rear). They observed Francis leaving the apartment, enter the Honda Accord, and drive away. Armed with the search warrant, the officers followed. Francis drove to a residence on Joliette Street, in Manchester. There, Francis met a man identified by the police as Emilio Flores, an associate of Francis's, a suspected drug dealer, and a state parolee.[4] Flores had an outstanding warrant for his arrest on a 2018 parole violation.

Flores went inside the building, and came back out holding a bag that he put in the backseat of Francis's car. He got into the car's passenger seat, and they drove away. While following Francis and Flores, law enforcement officers contacted Francis's parole officer. They notified him of the surveillance conducted at Francis's Thornton Street residence, that Francis was associating with Flores, and that Flores had brought a bag into Francis's vehicle.

---

[4]    As mentioned, as a parolee, Francis's parole conditions prohibited his association with other parolees.

**ADDENDUM PAGE 13**

Francis and Flores drove to TD Bank.  Francis got out of the car and went inside (Flores remained in the car).  Officers then executed the search warrant, searching Francis's car. Simultaneously, Francis was placed under arrest while still inside the bank, for violating the conditions of his parole. Flores was arrested as well.

The initial search of the car revealed a firearm holster under the driver's seat, and a kilogram of cocaine.  A subsequent search yielded two cell phones (belonging to Flores), $10,000 in cash, and a black bandana purported to be gang paraphernalia.

Francis's cell phone was sitting on a bank counter when he was arrested.  That phone was seized, incident to his arrest. Francis was later questioned by two Manchester police officers. A recording of that interview is in evidence.  Finally, a warrant to search the contents of Francis's cell phone was obtained and executed (21-mj-277-AJ).  That search yielded evidence of drug distribution activity.

**ADDENDUM PAGE 14**

**<u>Motion to Suppress Evidence Seized from the Vehicle</u>**

Francis argues that the search of his car was not supported by probable cause.  That is because, he says, the affidavit in support of the search warrant failed to disclose to the issuing magistrate judge that (1) the confidential informant had a prior conviction for falsifying physical evidence; and (2) law enforcement officers had noted in their reports regarding the CW's July 30, 2021, arrest that he had been dishonest during the encounter.  Had that information been disclosed, Francis argues, the warrant to search his vehicle would not have issued, since a reformed affidavit including that information would not be enough to establish probable cause.[5]

Francis first contends that the affidavit relies almost entirely on the CW's word alone.  The corroboration provided by law enforcement was insufficient, Francis says, because it failed to corroborate any actual criminal conduct.  And, Francis says, the affidavit lacks any discussion of the CW's credibility, or whether the CW had provided reliable information to law enforcement in the past.  Given those deficiencies,

---

[5]   Francis also makes the argument that the affidavit is facially insufficient to establish probable cause.  For the reasons discussed at the evidentiary hearing, that argument is unpersuasive.

Francis argues, the magistrate judge's assessment of probable cause would have been negatively impacted by information concerning the CW's past conviction for falsification of physical evidence, as well as the CW's dishonesty during the July 31 motor vehicle stop, and a warrant would not have issued. Francis argues the affiant's failure to include that relevant information at least constitutes a "reckless disregard for the truth."

"Probable cause for a search exists where there is a fair probability that evidence of a crime will be found in a particular place." U.S. v. Maglio, 21 F.4th 179, 185 (1st Cir. 2021) (citations omitted) (cleaned up). "For a warrant to be voided and the fruits of a search excluded, the defendant must: (1) show that the affiant in fact made a false statement or omission 'knowingly and intentionally, or with reckless disregard for the truth," (2) make this showing by a preponderance of the evidence, and (3) show that, with the recklessly omitted information added to the affidavit, the reformed affidavit fails to establish probable cause.'" U.S. v. Gifford, 727 F.3d 92, 98–99 (1st Cir. 2013) (quoting U.S. v. Tzannos, 460 F.3d 128, 136 (1st Cir. 2006)).

"An allegation is made with reckless disregard for the truth if the affiant in fact entertained serious doubts as to the truth of the allegations or where circumstances evinced obvious reasons to doubt the veracity of the allegations in the application." Gifford, 727 F.3d at 98-99. (internal quotation and citations omitted). "In the case of allegedly material omissions, recklessness may be inferred where the omitted information was critical to the probable cause determination." Id. at 99 (quotation omitted). "Negligent omissions — even negligent omissions of highly probative information — do not satisfy this strict standard." U.S. v. Tanguay, 787 F.3d 44, 49 (1st Cir. 2015) (citing Franks, 438 U.S. at 171) (further citations omitted).

The court fully credits Special Agent Ryan's testimony – there was no intent to omit material information nor any purpose to deceive. Best practices might counsel including the omitted information, but failure to include it did not undermine the magistrate judge's assessment. And, the affidavit, even if reformed to include the omitted facts, still establishes probable cause supporting issuance of the warrant. Neither the CW's prior criminal conviction, nor the CW's dishonesty as described in the July 30 police report are sufficient to undermine the probable cause finding.

**ADDENDUM PAGE 17**

As the Court of Appeals for the First Circuit instructed in U.S. v. Tiem Trinh, 665 F.3d 1, 10 (1st Cir. 2011), when an affidavit in support of a warrant application relies primarily on a witness's report to law enforcement, courts should:

> apply a nonexhaustive list of factors to examine the affidavit's probable cause showing.  These factors include, among others, (1) whether the affidavit establishes the probable veracity and basis of knowledge of persons supplying hearsay information; (2) whether an informant's statements reflect firsthand knowledge; (3) whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable (e.g., through police surveillance); and (4) whether a law enforcement affiant assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information.

(internal quotations and citations omitted) (cleaned up).  Agent Burke's affidavit adequately satisfies those factors and establishes probable cause to search, even when the omitted information is included.

First, the affidavit sufficiently establishes the probable veracity of the CW.  The CW is identified by name, and he plainly implicates himself in the offenses described, in a manner consistent with the evidence found.  See Tanguay, 787 F.32d at 50 ("informant's trustworthiness may be enhanced in a number of ways, including his willingness to reveal his

**ADDENDUM PAGE 18**

identity, the level of detail in his account, the basis of his
knowledge, and the extent to which his statements are against
his interest."). Special Agent Burke credibly testified that,
when assessing the CW's credibility, he took those circumstances
into consideration, as well as the fact that the CW was
providing information while in custody. Burke testified that
he:

> . . . recognized that [the CW] was facing significant
> exposure. [The CW] knew his criminal history, that it
> would result in you know a lengthy prison sentence and
> so it's not something he probably wanted to do and
> decided the only way to potentially receive
> consideration is to provide truthful information to us
> that we could then verify. Otherwise, obviously, if he
> provided fake information to us, that could just
> backfire. So I believe that motivated him to provide
> accurate information so that he could eventually,
> hopefully, receive some type of compensation or
> benefit.

See United States v. Batista, 31 F.4th 820, 823-24 (1st Cir.
2022). ("As we recognized in United States v. Vongkaysone, when
an informant 'has been caught dealing in drugs, it is to his
advantage to produce accurate information to the police so as to
qualify for the leniency he seeks.' 434 F.3d 68, 74 (1st Cir.
2006). . . . An informant's credibility is further bolstered
when the informant incriminates himself, as the CW here did in
revealing his history of purchasing drugs for resale from
[defendant].") (internal citations omitted) (cleaned up). See

also <u>U.S. v. Austin</u>, 991 F.3d 51, 56 (1st Cir. 2021) ("When a self-incriminating statement is provided by an informant whose identity is known to the authorities, the statement is more likely to be true because of the risk inherent in making such a statement.") (internal quotations and citations omitted).

The information provided by the CW was detailed and comprehensive.  Specifically, the CW provided information relating to the make, model and identifying details of defendant's car, the location of the reported drug deals, how his meet-ups with Francis were arranged, where Francis would store drugs to be exchanged at the meet-ups, the nearby location of the defendant's residence, the amounts of drugs the CW purchased from Francis, and the prices at which the drugs were purchased.  That level of detail (all of which is set out in the affidavit) further strengthens the CW's credibility, making his first-hand knowledge plausible.  <u>See</u> <u>U.S. v. Greenburg</u>, 410 F.3d 63, 67 (1st Cir. 2005) ("A specific, first-hand account of possible criminal activity is a hallmark of a credible tip.")

Second, law enforcement corroborated several aspects of the information provided by the CW, as could be done practically. Law enforcement officers corroborated that:

- Francis resided near the intersection where the reported drug deals with the CW occurred (an address he had not shared with his parole officer);

- Francis drove a Honda Accord matching the detailed description provided by the CW, including the color, license plate, and a description of the vehicle's rims (corroborated with Francis's parole officer and through on-site surveillance);

- The CW's former drug supplier, Ryan Call (familiar to law enforcement as a member of the Gangster Disciples) had indeed been arrested in early July, 2021, as the CW stated;

- The CW's description of the amount of drugs he regularly purchased from Francis was consistent with the amount of drugs seized from the CW's vehicles;

- The prices paid by the CW for the drugs were consistent with rates known to law enforcement at that time; and

- Francis was a convicted felon.

As the Supreme Court has noted, "[b]ecause an informant is right about some things, he is more probably right about other facts, — including the claim regarding  . . . illegal activity." Illinois v. Gates, 462 U.S. 213, 244 (1983) (internal quotation omitted).  Defendant criticizes law enforcement for not corroborating the CW's reports of criminal activity, but such corroboration is not necessarily required: "It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for

**ADDENDUM PAGE 21**

crediting the hearsay." Id. at 244-45 (internal quotations and
citations omitted). See also Tiem Trinh, 665 F.3d 1, 12 (1st
Cir. 2011) ("case law makes clear that corroboration of even
innocent activity reported in the tip may support a finding of
probable cause, and that corroboration of apparently innocent
activity can establish the reliability of the informant because
the activity might come to appear suspicious in light of the
initial tip.") (internal quotations omitted) (cleaned up).

Third, the information omitted, while not irrelevant, does
not meaningfully undermine the substantive information included
in the affidavit.  "[T]he commission of a past crime does not
necessarily undercut a person's veracity." U.S. v. Tanguay, 787
F.3d 44, 50 (1st Cir. 2015) (citing U.S. v. Rumney, 867 F.2d
714, 720-21 (1st Cir. 1989).  "Even a prior conviction for a
crime of dishonesty is not always dispositive of a witness's
reliability." Id. (citations omitted).  The omitted criminal
conviction here, while sounding ominous, was the result of the
CW dropping and then stepping on top of drugs he was holding in
an attempt to hide them during an ongoing drug possession
investigation – a fairly predictable "in the heat of the moment"
response from a criminal under active investigation for a drug
crime.  See Rumney, 867 F.2d 714, 720 (1st Cir. 1989)
(informant's "credibility was not undercut merely because

**ADDENDUM PAGE 22**

[informant] made predictable denials until the police could

produce evidence linking him to the robbery.").  With regard to

the CW's behavior during the July 31 traffic stop, Agent Burke

testified:

> I would go so far as to say that, if someone's being
> deceptive to law enforcement on a car stop precluded
> them from providing honest information to me, then I
> don't think I could probably interview anyone in this
> courtroom or elsewhere.  I just think it's that common
> a thing that people are stressed on car stops and they
> say things they don't mean[,] and they just try to,
> you know, avoid getting in trouble.
> 
>                        . . .
> 
> . . . I think deception on a traffic stop is so common
> that it didn't affect my assessment of the information
> he [later] provided, and, again, I just think
> deception on any traffic stop, if that were such a
> deal breaker for . . . collecting information from
> people, that we wouldn't have anybody to talk to.  So,
> when I read that, I didn't really think anything of
> it. I just thought that's sort of human nature.


The affidavit "made no secret" of the CW's criminality,

reporting that the CW had been arrested on two separate warrants

for drug offenses, and had provided the information concerning

Francis during a post-arrest interview.  U.S. v. Belton, 414 F.

Supp. 2d 101, 110 (D.N.H. 2006), aff'd, 520 F.3d 80 (1st Cir.

2008) (noting that "despite the omission of certain details of

that criminality, the magistrate 'issuing the search warrant

would manifestly have been aware that [informant] was not a

model citizen" in considering his reliability'") (quoting U.S.

**ADDENDUM PAGE 23**

v. Hall, 171 F.3d 1133, 1142 (8th Cir. 1999)) (cleaned up).
Neither the conviction nor the CW's failure to be entirely
forthright with the police during his July 31 stop would have so
significantly diminished the CW's credibility that the
magistrate judge's probable cause determination would have been
different.  See U.S. v. Tanguay, 907 F. Supp. 2d 165, 183-84
(D.N.H. 2012), ("information from dishonest informants may still
provide a basis for probable cause.' It is 'only in the absence
of additional evidence to bolster the informant's credibility or
the reliability of the tip' that 'an informant's criminal past
involving dishonesty is fatal to the reliability of the
informant's information, and his/her testimony cannot support
probable cause.'") (quoting U.S. v. Patayan Soriano, 361 F.3d
494, 506-07 (9th Cir. 2004) and U.S. v. Elliott, 322 F.3d 710,
716 (9th Cir. 2003)) (cleaned up).


Finally, Special Agent Burke, a ten-year veteran of the
FBI, assessed the significance of the information provided by
the CW based on his own professional experience, skill, and
knowledge.  There is no evidence suggesting that Burke harbored
any doubts at all – let alone serious doubts – about the
veracity of the affidavit, or that he thought that either of the
omitted facts were significant in assessing probable cause.

**ADDENDUM PAGE 24**

In sum, even upon a reformed affidavit, there was a fair
probability that contraband or evidence of a crime would be
found in defendant's car.  Accordingly, defendant's motion to
suppress evidence obtained from the search of his vehicle is
**DENIED**.

**Motion to Suppress Evidence Obtained During Arrest**

Francis argues – and the government concedes – that his
arrest, on grounds that he was in violation of his state parole
conditions, was not authorized under New Hampshire law.
Therefore, Francis says, evidence obtained from his cell phone,
which was seized from the bank counter incident to his arrest,
and the statements he later made to law enforcement officers in
a post-arrest interview, should be suppressed.

Francis was arrested in the bank for a state parole
violation, pursuant to N.H. Rev. Stat. Ann. 504-A:4 (failure to
inform his parole officer of his change of address).  But, that
statute provides that an arrest for a parole violation involving
non-criminal conduct requires a warrant issued by a parole board
member, and a request from a parole officer if the arrest is by
local, or other law enforcement officers.  No warrant or written
detention order was issued at the time of Francis's arrest, and

**ADDENDUM PAGE 25**

a state parole officer did not request that Francis be arrested.
Accordingly, his arrest was not authorized under state law.

Again, the government concedes that point, but objects to
Francis's motion to suppress on several bases.  First, the
government argues that seizure of the phone did not violate the
Fourth Amendment because Francis was a parolee at the time of
his arrest, and, as a result, had a diminished expectation of
privacy.  Second, the government argues that law enforcement was
entitled to detain Francis while the vehicle warrant was being
executed, and, that Francis would have inevitably been arrested
on probable cause to believe he was engaged in drug dealing
after drugs were discovered in his car shortly thereafter.[6]
Therefore, the government says, the seizure of defendant's phone
was inevitable, and defendant's post-arrest interview would have
inevitably been conducted following his inevitable arrest for
drug possession.  Finally, the government argues that, even if
the seizure of the phone was not incident to a lawful arrest,
the exclusionary rule should not apply because the "unique
circumstances of defendant's arrest and compressed timeline with

---

[6]    Francis was initially detained on the purported parole
violation, until the federal complaint was filed on September 3,
2021, after which he was arrested on federal charges, and
brought into federal custody.

the execution of the vehicle search warrant do not warrant the
exclusion of evidence in this case." Govt. Supp. Br. in Support
of Obj. at 5. Because the inevitable discovery doctrine
applies, the court need not reach the government's additional
arguments.

The inevitable discovery doctrine provides that, "evidence
that would inevitably have been discovered without reference to
the police error or misconduct may be admitted at trial." U.S.
v. Hughes, 640 F.3d 428, 440 (1st Cir. 2011) (quotations
omitted). "Such evidence is admissible so long as (i) the
lawful means of its discovery are independent and would
necessarily have been employed, (ii) discovery by that means is
in fact inevitable, and (iii) application of the doctrine in a
particular case will not sully the prophylaxis of the Fourth
Amendment." Id. (quotations and citation omitted).

Here, the "lawful means," the already-issued and
contemporaneously executed warrant to search the car, were
independent of the defendant's arrest on a parole violation
inside the bank. As discussed above, the warrant to search the
car was valid. At the time of defendant's arrest inside TD
Bank, the search of defendant's car had begun in the bank's
parking lot. Had defendant not been arrested inside the bank,

**ADDENDUM PAGE 27**

he surely would have been arrested just moments later after drugs were discovered in his car and that information was communicated to officers in the bank.  Given the events that unfolded following execution of the warrant, it is difficult to imagine any circumstance in which Francis's cell phone would not have been seized, if only to inventory it.  In other words, it would have "inevitably" been seized moments later.  The cell phone's contents would likely, as occurred, have been the subject of an application for an additional search warrant, which, when issued, would have been executed, leading to the inevitable discovery of the incriminating information stored on the phone.

Finally, application of the inevitable discovery doctrine in this case would not provide any incentive for future police misconduct.  The evidence of record makes clear that the officers who arrested Francis inside the bank honestly, though mistakenly, believed they were authorized to effect an arrest based on a clear violation of the terms of Francis's parole conditions.  And, as mentioned, the officers would have, without question, arrested Francis moments later when the discovery of drugs in his car was communicated to them.  See U.S. v. Almeida, 434 F.3d 25, 29 (1st Cir. 2006) (noting that where "officers would have eventually seized the drugs by arresting Almeida (as

they had planned to do before questioning him), they had little
incentive to try to obtain the crack through unconstitutional
means when a lawful means was readily available."). As the
government persuasively points out, the circumstances of this
case are unusual and unlikely to serve as an incentive for
police to cut constitutional corners in the future. The error
in arresting Francis was not an error related to probable cause,
but an error in applying New Hampshire law.

For these reasons, as well as those argued in the
government's briefing in support of its objection (documents no.
61 and 85), defendant's motion is **DENIED**.

### Conclusion

Defendant's motion to suppress evidence seized when
executing the search warrant for the white Honda Accord
(document nos. 35 and 73) is **DENIED**. Defendant's motion to
suppress cell phone evidence and statements resulting from
unconstitutional arrest (document no. 54) is **DENIED**.

Defendant's motions to suppress the introduction of
evidence gathered by law enforcement during a search of his
apartment on September 2, 2021, (document no. 34), and to
suppress his statements made on September 7, 2021, (document no.
36) are deemed moot.

**ADDENDUM PAGE 29**

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 3, 2023

cc:   Charles L. Rombeau, AUSA
      Aaron G. Gingrande, AUSA
      Richard Guerriero, Esq.
      U.S. Marshal
      U.S. Probation

**ADDENDUM PAGE 30**