No. 24-1386

# In the United States Court of Appeals for the First Circuit

———————

UNITED STATES OF AMERICA,
Appellee,

v.

MICHAEL FRANCIS,
Defendant-Appellant.

———————

On Appeal from the United States District Court
for the District of New Hampshire
No. 1:21-cr-153

———————

**BRIEF FOR THE UNITED STATES**

———————

JOHN J. MCCORMACK
Attorney for the United States Acting Under
Authority Conferred by 28 U.S.C. § 515

AARON G. GINGRANDE
Assistant United States Attorney
District of New Hampshire
53 Pleasant Street, 4th Floor
Concord, NH 03301
603-230-2504
aaron.gingrande@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

JURISDICTIONAL STATEMENT............................................................. 1

ISSUES PRESENTED ................................................................................ 1

STATEMENT OF THE CASE .................................................................... 1

    I.  Statement of Facts ........................................................................ 2

    II. Course of Proceedings ……………………………………………….6

SUMMARY OF ARGUMENT ................................................................. 13

ARGUMENT ............................................................................................ 15

    I. The District Court Correctly Found that Probable Cause
       Supported the Search Warrant. ……………………………………15

    II.  The District Court Correctly Denied Francis's *Franks* Motion …….27

CONCLUSION.......................................................................................... 36

CERTIFICATE OF COMPLIANCE ........................................................ 37

CERTIFICATE OF SERVICE ................................................................. 37

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page(s)**

*Charron v. Cnty. of York*, 49 F.4th 608 (1st Cir. 2022) ............................................... 20

*Davis v. United States*, 564 U.S. 229 (2011) ............................................................ 26

*Franks v. Delaware*, 438 U.S. 154 (1978) ......................................................... passim

*Herring v. United States*, 555 U.S. 135 (2009) ....................................................... 26

*Illinois* v. *Gates*, 462 U.S. 213 (1983) .................................................... 15, 23, 35

*Messerschmidt v. Millender*, 565 U.S. 535 (2012) ................................................. 26

*United States v. Arias*, 848 F.3d 504 (1st Cir. 2017) ............................................. 28

*United States v. Austin*, 991 F.3d 51 (1st Cir. 2021) ............................................. 18

*United States* v. *Barnard*, 299 F.3d 90 (1st Cir. 2002) ............................... 19, 20, 24

*United States* v. *Batista*, 31 F.4th 820 (1st Cir. 2022) ......................................... 19

*United States v. Bucuvalas,* 970 F. 2d 937 (1st Cir. 1992) ..................................... 15

*United States v. Capozzi,* 347 F.3d 327 (1st Cir. 2003) .......................................... 35

*United States v. Comer*, 565 F. App'x 729 (10th Cir. 2014) .................................... 34

*United States v. Croto*, 570 F.3d 11 (1st Cir. 2009) ............................................. 17

*United States v. Dion*, 859 F.3d 114 (1st Cir. 2017) ............................................. 15

*United States v. Dudley*, 100 F.4th 74 (1st Cir. 2024) ............................................ 30

*United States v. Feliz*, 182 F.3d 82 (1st Cir. 1999) ............................................... 15

*United States* v. *Gifford*, 727 F.3d 92 (1st Cir. 2013) ..................................... 16, 21

*United States v. Kinison*, 710 F.3d 678 (6th Cir. 2013) .......................................... 25

*United States v. Lamon*, 930 F.2d 1183 (7th Cir. 1991) ......................................... 20

*United States v. Leon*, 468 U.S. 897 (1984) ....................................................... 26, 27

*United States v. Leonard*, 17 F.4th 218 (1st Cir. 2021) ....................................... 18, 23

*United States v. Maglio*, 21 F.4th 179 (1st Cir. 2021) ........................................... 17

*United States v. Mastroianni*, 749 F.2d 900 (1st Cir. 1984) .................................... 28

*United States v. Pelham,* 801 F.2d 875 (6th Cir.1986) ........................................... 17

*United States v. Ranney*, 298 F.3d 74 (1st Cir. 2002) ........................................... 28

*United States v. Romain,* 393 F.3d 63 (1st Cir. 2004) ............................................ 18

*United States* v. *Rumney*, 867 F.2d 714 (1st Cir. 1989) ............................. 29, 32, 34

*United States v. Sheehan*, 70 F.4th 36 (1st Cir. 2023) ........................................... 25

*United States v. Tanguay*, 787 F.3d 44 (1st Cir. 2015) ............................. 28, 31, 32, 33

*United States v. Tzannos*, 460 F.3d 128 (1st Cir. 2006) ......................................... 27

*United States* v. *Vongkaysone*, 434 F.3d 68 (1st Cir. 2006) .................................. 19

*United States v. Williams*, 737 F.2d 594 (7th Cir. 1984) ........................................ 28

*United States v. Zayas–Diaz,* 95 F.3d 105 (1st Cir. 1996) ...................................... 17

## FEDERAL STATUTES

18 U.S.C. § 3231 ...................................................................................................... 1

21 U.S.C. § 841(a)(1) ........................................................................................ 1, 2, 6

28 U.S.C. § 515 .................................................................................................... i, 36

28 U.S.C. § 1291 ................................................................................................. 1

New Hampshire Rev. Stat. Ann. 641:6 ........................................................... 31

## **FEDERAL RULES**

Fed. R. App. P. 32(a)(5) ................................................................................... 37

Fed. R. App. P. 32(a)(6) ................................................................................... 37

Fed. R. App. P. 32(a)(7)(B) .............................................................................. 37

Fed. R. App. P. 32(f) ........................................................................................ 37

## JURISDICTIONAL STATEMENT

Defendant-Appellant Michael Francis appeals the final judgment in this criminal case. The district court (McAuliffe, J.), which had jurisdiction under 18 U.S.C. § 3231, entered judgment on April 10, 2024. JA 410-416.[1] Francis filed a timely notice of appeal. JA 417. This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUE PRESENTED

Whether the district court correctly declined to suppress evidence recovered from Francis's vehicle during a warrant-authorized search where the warrant affidavit documented statements from an informant implicating Francis in drug trafficking and where law enforcement corroborated facts reported by the informant.

## STATEMENT OF THE CASE

After entering a plea agreement, Francis pleaded guilty to one count of possessing with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). The district court sentenced Francis to 150 months of imprisonment. Francis reserved the right to appeal the district court's order denying his motion to suppress, which he now does.

---

[1] "JA" refers to the joint appendix; "SA" refers to the sealed appendix.

1

## I.    Statement of Facts

In late August 2021, law enforcement obtained a federal warrant to search the vehicle of Michael Francis, who was the subject of a drug trafficking investigation.

### A.    The Search Warrant

The search-warrant affidavit reported information that an informant[2] provided to law enforcement on August 19, 2021.  *See* JA 59-80 (redacted affidavit); SA 1-27 (unredacted affidavit).[3]

1.    At the time, the informant had two outstanding arrest warrants related to motor-vehicle stops and searches that yielded drugs.  In June 2021, officers with the Manchester Police Department conducted a traffic stop of a car in which the informant was riding.  SA 3-4, ¶ 7. Officers seized 284.5 grams of methamphetamine, 85.9 grams of a substance that was either heroin or fentanyl, 7.5 grams of crack cocaine, and a digital scale in a backpack from the location where the informant had been sitting.  *Id*. The following month, officers stopped

---

[2] In proceedings below, the government referred to this individual as a cooperating witness because he was not a signed informant with the FBI. JA 159.  The district court employed the same terminology.  Francis's opening brief, however, refers to the individual as an "informant."  To avoid confusion, the government will adopt Francis's terminology in this brief.

[3] For sake of simplicity, all further references in this brief to the search warrant affidavit at issue are to the unredacted affidavit in the Sealed Appendix only.

a different car that the informant was driving and seized $2,408 in U.S. currency, 464.7 grams of methamphetamine, and two digital scales. SA 4, ¶ 8. These stops led to the issuance of arrest warrants for violations of New Hampshire's Controlled Drug Act. SA 4, ¶¶ 7 & 8.

2.     Law enforcement arrested the informant on August 19, 2021. SA 4, ¶ 9. In a post-arrest interview, the informant waived his *Miranda* rights and provided detailed information about his drug suppliers. *Id.* With respect to the first traffic stop, the informant stated that a Gangster Disciples member had personally provided him with the drugs. The informant met this supplier in prison and subsequently maintained a relationship.[4] The supplier told the informant that he (the supplier) obtained the drugs from Francis—who was also a member of the Gangster Disciples. SA 4-5*,* ¶ 10.

The informant described that, in early July 2021, law enforcement arrested his supplier. SA 5, ¶ 11. Following that arrest, Francis contacted the informant directly and said that he (Francis) would now supply drugs to the informant. *Id.* Francis later provided the informant with the drugs that law enforcement seized during the second motor-vehicle stop. *Id.*

---

[4] The supplier is named in the unredacted affidavit but his name is redacted in the publicly filed version.

The informant further detailed the price and quantity of the drugs he bought from Francis.  The informant received drugs from Francis daily: one pound of methamphetamine for $6,600 to $6,800 per pound; a couple ounces of cocaine for $1,400 per ounce; and a half pound of heroin or fentanyl for $5,000 per 500 grams.  SA 5, ¶ 12.  The informant then distributed these drugs to customers throughout New Hampshire.  *Id.*

The informant also disclosed the locations where he and Francis exchanged money for drugs.  The informant met Francis in Manchester, often near Rimmon and Putnam Streets.  SA 5, ¶¶ 13-14.  The informant believed that Francis lived near this intersection.  *Id*. at ¶ 13.  The informant then described Francis's vehicle: a "white Honda Accord…newer…got greyish rims on it…20s…permanent plates [from New Hampshire]."  *Id*. at ¶ 14.  According to the informant, Francis stored the drugs in the Accord's passenger compartment or trunk.  SA 5-6*,* ¶ 14.  The informant also observed a pistol tucked between the driver's seat and the center console of Francis's vehicle during the drug transactions.  *Id.* at ¶ 14.

3.    Law enforcement corroborated various facts provided by the informant.  First, officers confirmed that the informant's initial supplier had been arrested in early July 2021 and remained incarcerated, thus validating the informant's explanation for Francis assuming the role of drug supplier.  SA 5, ¶

11.   Second, a vehicle-record check showed that Francis's vehicle matched the informant's description.  SA 6, ¶ 15.  Law enforcement was also in contact with Francis's parole officer, who stated that Francis regularly used that vehicle.  *Id.*  Finally, a law enforcement database showed that Francis resided at a Manchester residence near the intersection where the informant said he and Francis had conducted drug transactions.  SA 5, ¶ 13; SA 6, ¶ 15.  Officers then conducted surveillance at this address and observed a man resembling Francis in the parking lot next to the vehicle registered to Francis.  SA 6, ¶ 15.  Law enforcement also learned that Francis was a convicted felon.  SA 5-6, ¶ 14.

### B.    Execution of the Search Warrant.

On September 1, 2021, law enforcement conducted surveillance of Francis's residence. JA 176.  Officers observed Francis leave the residence, enter the vehicle named in the warrant, and drive to a different residence.  *Id.*  There, Francis picked up Emilio Flores—a suspected drug dealer who was subject to arrest for an earlier parole violation.  *Id.*; JA 227.

Law enforcement observed Flores carry a bag out of his residence, place it in the back seat of Francis's vehicle, and then enter the front passenger seat. JA 176.  Francis and Flores then drove to a bank.  *Id.*  Upon parking, Francis got out of his vehicle and entered the bank; Flores remained in the vehicle.  JA 176-178.  Officers then arrested Francis inside the bank and arrested Flores in

the parking lot.  *Id.*

An initial search of Francis's vehicle revealed a tan firearm holster underneath the driver's seat and a vacuum-sealed one-kilogram brick of cocaine within a bag on the rear passenger side seat.  JA 47-48; 178.  A subsequent search recovered a black bandana of the type worn by members of the Gangster Disciples, $10,000 in cash, and two cell phones.  *Id.*

The kilogram of cocaine from Francis's vehicle formed the basis of a possession with intent to distribute charge on which Francis was indicted on December 13, 2021, JA 20-24, and to which Francis subsequently pled guilty on November 14, 2023, JA 17.

## II.     Course of Proceedings

On December 13, 2021, a federal grand jury returned an indictment charging Francis with multiple federal offenses including, as relevant here, one count of possessing with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii).  JA 20-24.

### A.     Motion to Suppress and Evidentiary Hearing

Francis filed a motion to suppress the evidence recovered from his vehicle. He argued that (1) the search of his car was not supported by probable cause; and (2) the warrant affiant recklessly failed to disclose that the informant had a

prior conviction for falsifying physical evidence and was dishonest with law enforcement during the July 2021 motor-vehicle stop.

The Court held a two-day evidentiary hearing. Because Francis had argued under *Franks v. Delaware*, 438 U.S. 154 (1978) that certain omitted information undermined the veracity of statements in the affidavit, the Court conducted both a suppression hearing and a *Franks* hearing. JA 374. Among the other witnesses, the government adduced testimony from the FBI Special Agent who authored the warrant affidavit.

The Agent had over a decade of work experience at the FBI, including on gang and drug taskforces. JA 154-155. He previously applied for and obtained multiple search warrants. JA 155. The Agent knew that Francis was a leader of the Gangster Disciples—a criminal street gang. JA 156; 159.

The Agent testified that the informant had made incriminating statements about his own criminal activity and had admitted to possessing the drugs seized during the two traffic stops. JA 161-162. The informant further admitted that he intended to distribute the drugs throughout New Hampshire and that drug dealing was his source of income. *Id.*

The Agent testified the informant's information aligned with the FBI's own investigation. For instance, the informant had stated that his initial supplier provided the drugs recovered from the June 2021 car stop but was subsequently

arrested, at which point Francis became the informant's supplier. JA 166. The Agent testified that he was familiar with the initial supplier and Francis, and knew they were both members of the Gangster Disciples. *Id*. The Agent also testified that the informant's information about the prices and quantities of drugs that Francis offered aligned with prevailing street prices. *Id*.

The Agent then testified about law enforcement's efforts to corroborate the informant's information. As one example, the Agent explained that he confirmed, through database searches and physical surveillance, that Francis lived at an address near the location where the informant and Francis conducted their drug deals. JA 171. At that time, Francis had not reported this address to his parole officer. JA 177. The Agent viewed this information as corroborative of the informant's account. JA 171.

Addressing the alleged affidavit omissions, the Agent testified he had reviewed the informant's criminal history. JA 173. But the Agent did not think to include the informant's criminal history in the affidavit because he did not view him as an "informant": the individual's identity was disclosed in the affidavit and the FBI had not signed him up as an informant. JA 174; 180. The Agent testified he would have disclosed the criminal history in the affidavit for an anonymous or confidential informant. JA 179.

The Agent nonetheless testified that he found the informant to be "completely credible." JA 175.  The Agent stated that the informant had shared information that put him in fear for his safety and which he shared only after "great consideration."   JA 175.   Further, the Agent testified that he had interviewed hundreds of people and found the informant to be credible "because of the details … provided," JA 195-196, because "[the informant] was facing significant exposure" for incarcerative time based on his criminal history, and because the provision of "fake information to us … could just backfire." JA 204-205.

The Agent testified that, in his view, the informant's prior state conviction for falsifying physical evidence lacked significance.  JA 194.  The Agent had "see[n] all types of people get charged [] with falsifying physical evidence and it could be [] for as simple as covering up a beer can when you get stopped by the police, or … throwing a joint on the street when a police officer approaches you."  JA 193-194.  The government then introduced the relevant charging document, which stated that the informant had "concealed what appeared to be drugs by dropping them to the ground and stepping on them."  JA 112.

Finally, Francis introduced police reports from the July 2021 traffic stop stating that the informant had provided dishonest answers to officers.  Notably, the informant lied about from where he had come and evaded a question about

drugs in his car. JA 370 (summarizing reports). The officers believed the informant was under the influence of drugs at the time of the car stop when he was speaking to them. *Id.* The Agent testified that he did not view this encounter as significant because "people are stressed on car stops and they say things they don't mean[,] and they just try to … avoid getting in trouble." JA 334. Because "deception on a traffic stop is so common," the Agent explained that "it didn't affect [his] assessment of the information [the informant later] provided." JA 335.

## B.    District Court Ruling

The district court issued a written order denying Francis's motion to suppress. JA 373-395. The court found the Agent's testimony to be credible, held that the warrant was supported by probable cause, and further held that the omitted facts pertaining to the informant's prior conviction and dishonest traffic-stop answers did not detract from the probable-cause finding. JA 382.

1.    With respect to probable cause, the district court concluded that the affidavit "sufficiently established the probable veracity of the [informant]." JA 383. The court found persuasive that the informant "was identified by name and plainly implicate[d] himself in the offense described, in a manner consistent with the evidence found." *Id.* The court agreed that the circumstances under which the informant provided information (*i.e.*, he was in custody and facing a

lengthy prison sentence) gave him a motivation to tell the truth and that his information was subject to law enforcement verification. JA 384. The court characterized the informant's information as "detailed and comprehensive." JA 385. It specifically cited the informant's detailed description of Francis's car, his meetings with Francis, and the drug quantities and prices that Francis offered. *Id*.

The district court further highlighted law enforcement's corroboration of the following key information:

- Francis resided near the intersection where the reported drug deals with the informant occurred (an address he had not shared with his parole officer).

- Francis drove a Honda Accord matching the informant's detailed description, including the color, license plate, and a description of the vehicle's rims (corroborated with Francis's parole officer and through on-site surveillance).

- The informant's former drug supplier had indeed been arrested in early July 2021, as the informant stated.

- The informant's description of the amount of drugs he regularly purchased from Francis was consistent with the amount of drugs seized from the informant's vehicles.

- The prices paid by the informant for the drugs were consistent with rates known to law enforcement.

- Francis was a convicted felon.

JA 386.

2.     The district court held that no *Franks* violation occurred.  The court
reasoned that the omitted information about the informant's criminal record,
"while not irrelevant, [did] not meaningfully undermine the substantive
information included in the affidavit."  JA 387.  It explained that "[t]he omitted
criminal conviction …, while sounding ominous, was the result of the
[informant] dropping and then stepping on top of drugs he was holding in an
attempt to hide them during an ongoing drug possession investigation—a fairly
predictable 'in the heat of the moment' response from a criminal under active
investigation for a drug crime."  *Id.*  The court relatedly observed that the
affidavit "made no secret" of the informant's criminality, including his arrest on
two separate warrants for drug offenses.  JA 388.

The district court concluded that this omitted information, alongside the
informant's dishonest responses during the July 2021 traffic stop, would have
not so significantly diminished the informant's credibility that the magistrate
judge's probable cause determination would have been different.  JA 389.
Finally, the court found "no evidence suggesting that [the Agent] harbored any
doubts at all—let alone serious doubts—about the veracity of the affidavit, or
that he thought that either of the omitted facts were significant in assessing
probable cause."  JA 389.  The court noted that the Agent "assessed the

significance of the information provided by the [informant] based on his own professional experience, skill, and knowledge." *Id.*

### C.    Guilty Plea

Francis entered a plea agreement in which he agreed to plead guilty to possession with intent to distribute cocaine, and the government agreed to dismiss the remaining counts. JA: 18; JA 410-416. Francis also preserved his right to appeal the district court's order denying his motion to suppress. *Id.* The district court subsequently sentenced Francis to 150 months of imprisonment.

## SUMMARY OF ARGUMENT

1.    The district court correctly held that the affidavit articulated probable cause supporting the search warrant for Francis's vehicle. The affidavit amply documented the reliability of the informant's information. First, the informant was not an anonymous tipster and provided his information to law enforcement while in custody, which allowed investigators to assess his credibility. The information was also against the informant's penal interest; his statements implicated himself in a drug distribution conspiracy and subjected him to greater criminal liability. Moreover, the informant's information was detailed. He discussed the way Francis assumed the former drug supplier's business; the prices and amounts of drugs Francis sold; Francis's appearance, gang affiliation, and vehicle; and the locations inside the vehicle where Francis

stored his drugs.  The informant knew the information based on his personal involvement in drug deals with Francis.  Finally, law enforcement corroborated significant portions of the informant's information through investigation and surveillance.  This information, when considered collectively and in combination with the great deference afforded to the magistrate judge's determinations, amply demonstrates probable cause.

2.    After conducting a two-day evidentiary hearing and listening to the Agent's testimony, the district court found no *Franks* violation.  That ruling is correct and well supported by the record.  As the court explained, Francis failed to meet his burden to show that the omission of information regarding the informant's prior conviction and his dishonest traffic-stop responses was a deliberate or reckless effort by the Agent.  To the contrary, the court expressly credited the Agent's testimony, which discussed his preparation of the affidavit and his conclusion that the omitted information lacked material significance.  Moreover, the court correctly and persuasively reasoned that the omitted information did not undermine the magistrate judge's probable-cause finding.

# ARGUMENT

## I.  The District Court Correctly Found that Probable Cause Supported the Search Warrant.

The district court correctly held that probable cause supported the warrant authorizing the search of Francis's vehicle.  The accompanying affidavit provided detailed information documenting a fair inference that Francis trafficked drugs and that drug evidence would be found in his car.

### A.  Standard of Review

This Court reviews the district court's legal conclusions concerning probable cause *de novo*.  *See United States v. Dion*, 859 F.3d 114, 122 (1st Cir. 2017).  As relevant here, a warrant affidavit "must demonstrate probable cause to believe that (1) a crime has been committed … and (2) enumerated evidence of the offense will be found at the place to be searched."  *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999).  Probable cause means only "a fair probability."  *Illinois* v. *Gates*, 462 U.S. 213, 238 (1983).  The reviewing court approaches this inquiry in "a practical, common-sense fashion, and … accord[s] considerable deference to reasonable inferences the [issuing magistrate] may have drawn from the attested facts."  *United States* v. *Bucuvalas*, 970 F. 2d 937, 940 (1st Cir. 1992) (quotation marks and citations omitted).

15

**B.**    **The informant's report and law enforcement's corroboration of it implicated Francis and his vehicle in drug trafficking.**

The warrant affidavit documented a fair probability that contraband or evidence of a crime would be found in Francis's car.  The informant reported that Francis sold drugs, that he drove his car to drug transactions, and that he stored his drugs and a gun in that car.  On appeal, Francis contends that this showing was insufficient because law enforcement failed to validate the informant's information.  That contention lacks merit, and this Court should reject it.

This Court has articulated a non-exhaustive list of factors to guide the determination whether an informant's information should be credited in the probable-cause inquiry: "(1) whether the affidavit establishes the probable veracity and basis of knowledge of persons supplying hearsay information; (2) whether an informant's statements reflect firsthand knowledge; (3) whether some or all [of] the informant's factual statements were corroborated wherever reasonable and practicable (e.g., through police surveillance); and (4) whether a law enforcement affiant assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information."  *United States* v. *Gifford*, 727 F.3d 92 (1st Cir. 2013).  None of the factors is indispensable; stronger evidence on one or more factors may

16

compensate for a weaker showing on another. *United States v. Zayas–Diaz,* 95 F.3d 105, 111 (1st Cir. 1996).

Each factor supports the magistrate's probable-cause finding here.

### 1.    The affidavit established the informant's veracity and basis of knowledge.

This Court has previously credited four factors as indicia of informant trustworthiness in a warrant affidavit: the informant's identity is revealed; the informant is in law enforcement custody; the informant provided personal firsthand observations of criminal activity; and the informant potentially implicated him or herself in sharing the information with law enforcement. *See United States v. Maglio*, 21 F.4th 179, 185-186 (1st Cir. 2021).

Each factor is present here. First, law enforcement knew the informant's identity, "which in itself bolsters [the informant's] credibility because it opens [the informant] up for charges related to making a false report." *United States v. Croto,* 570 F.3d 11, 14 (1st Cir. 2009). That an informant is known to law enforcement and named in the affidavit, as here, supports an inference of reliability. *See Maglio,* 21 F.4th at 186; *United States v. Pelham,* 801 F.2d 875, 878 (6th Cir.1986) ("When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the

circumstances' presents a 'substantial basis' for conducting a search for that evidence.").

Second, the informant provided the information to law enforcement while in custody during a post-arrest interview. Such a face-to-face encounter affords law enforcement "the opportunity to perceive and evaluate personally [the] informant's mannerisms, expressions, and tone of voice" and to assess the informant's veracity. *United States v. Romain,* 393 F.3d 63, 73 (1st Cir. 2004).

Third, the informant made statements against penal interest—notably, that he purchased large quantities of drugs from Francis and distributed them to customers throughout New Hampshire. Because these statements implicated the informant in a conspiracy with both Francis and the informant's prior supplier, they carry inherent reliability. *Cf. United States v. Leonard*, 17 F.4th 218, 225 (1st Cir. 2021) (finding probable cause where informant provided information about defendant's drug-dealing and gun possession that also implicated informant); *United States v. Austin*, 991 F.3d 51, 56 (1st Cir. 2021) ("When a self-incriminating statement is provided by an informant whose identity is known to the authorities, the statement is more likely to be true because of the risk inherent in making such a statement.").

On top of this, the informant provided this information to obtain leniency on his pending charges, which gave him a strong incentive to supply accurate

18

information.  As this Court recognized, when an informant "ha[s] been caught dealing in drugs, it [is] to his advantage to produce accurate information to the police so as to qualify for the leniency he [seeks]."  *United States* v. *Vongkaysone*, 434 F.3d 68, 74 (1st Cir. 2006); *see also United States* v. *Batista*, 31 F.4th 820, 823 (1st Cir. 2022) (information provided by an informant who had been arrested in a fentanyl trafficking investigation and agreed to provide information about the defendant supported probable cause).

### 2.    The informant's statements reflected firsthand knowledge.

"The credibility of an informant is enhanced to the extent he has provided information that indicates first-hand knowledge."  *United States* v. *Barnard*, 299 F.3d 90, 93–94 (1st Cir. 2002) (citation omitted).  Here, the informant provided detailed descriptions of Francis's drug trafficking based on personal observation. First, the informant described how Francis started supplying drugs after the arrest of his former supplier, with whom the informant had established a personal relationship and whom the informant knew to be a member of the same gang as Francis.  Second, the informant said he personally met Francis near a particular intersection in Manchester to conduct drug deals.  Third, the informant noted the precise details of his transactions with Francis, including the quantities and prices of the drugs, the locations where Francis stored the

drugs in his vehicle, and the fact that Francis stored a pistol in between the driver's seat and center console.[5]

This "first-hand information provided a link between the illegal activity observed and the place to be searched" and demonstrated the informant's "knowledge of concealed illegal activity as opposed to easily knowable, nonincriminating facts." *Barnard*, 299 F.3d at 94 (informant's firsthand observations of firearms at defendant's house and description of defendant threatening him with one firearm provided assurance of reliability) (quotation omitted).

Francis responds (Br. 27) that "the affidavit does not actually establish that the informant had any firsthand knowledge." That contention "misapprehends the probable cause standard," which "does not require the fine resolution … that a reasonable-doubt or even a preponderance standard demands." *Charron v. Cnty. of York*, 49 F.4th 608, 617 (1st Cir. 2022) (quotation marks and citation omitted). As the district court correctly observed, the informant's "level of detail

---

[5] Francis was a convicted felon prohibited from possessing a gun. That Francis regularly carried a gun in his vehicle supported an inference the gun would still be in the vehicle and his criminal activity was ongoing. *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991) (reasoning that passage of time between the report of criminal behavior and a search does not render the information stale when criminal activity is ongoing).

… mak[es] his first-hand knowledge *plausible*," JA 385, which is all that probable cause requires.

Francis's reliance (Br. 30) on *United States v. Gifford*, 727 F.3d 92 (1st Cir. 2013), is likewise misplaced. There, this Court affirmed a district court ruling that a warrant to search a residence lacked probable cause. *Id.* at 102. This Court found unreliable an informant's statement in the warrant affidavit that the defendant was growing marijuana at his residence, primarily because there was no description of the informant's basis of knowledge or how the informant knew the defendant. *Id.* at 100. In contrast, the affidavit here describes firsthand observations the informant made of Francis using his vehicle during drug deals and the informant's relationship with Francis as his drug supplier. Furthermore, in *Gifford*, this Court found law enforcement's attempts to corroborate the informant's tip meaningless due to a *Franks* violation.[6] *Id.* at 101. Here, no omission from the affidavit negated law enforcement's corroboration efforts, which confirmed key details of the informant's information.

---

[6] In *Gifford*, the affiant of the warrant affidavit asserted the defendant's home used significantly more electricity than surrounding homes, which made it more likely the defendant was growing marijuana there. *Gifford*, 727 F.3d at 101. But the affiant recklessly omitted the fact that the defendant's home was larger than two out of the three comparator homes he examined, and that the defendant's home operated a business to board horses, which would have required more electricity. *Id.*

### 3. Law enforcement corroborated significant portions of the informant's information.

This is not a case where law enforcement simply accepted the informant's information. The district court correctly explained that "law enforcement corroborated several aspects of the [informant's] information." JA 385.

To illustrate, the informant reported that his drug deals with Francis took place near Rimmon and Putnam Streets in Manchester. SA 5, ¶ 13. Law enforcement then queried a law enforcement database and found that Francis's residence was near that intersection, SA 6, ¶ 16, rendering the informant's report of conducting drug deals with Francis at that intersection more plausible.[7] Officers confirmed Francis's residence through on-site surveillance. *Id.* Officers also confirmed, through discussion with a parole officer and by conducting on-site surveillance, that Francis's vehicle matched the informant's detailed description, which included the make, color, and license plate. SA 6, ¶¶ 14-15.

The informant further described how Francis started supplying him with drugs after his former supplier was arrested. SA 4-5, ¶¶ 10-12. Law enforcement confirmed that the former supplier was arrested in early July 2021 and remained

---

[7] This was not an example of law enforcement simply confirming a commonly known address of the defendant provided by an informant. Indeed, the informant in this case had never been to Francis's residence and did not provide the address to law enforcement. JA 171. What is more, Francis, in violation of his parole terms, had never reported this particular residence to his parole officer. JA 177; JA 229-230.

incarcerated as of the writing of the search warrant affidavit at issue, thus corroborating the informant's chronology.  SA 5, ¶ 11.

Finally, the informant stated that when he purchased methamphetamine from Francis, it was in one-pound quantities.  SA 5, ¶ 12. That report was consistent with the amount of methamphetamine (464.7 grams) recovered from the informant's vehicle after the July 30, 2021 motor vehicle stop.  SA 4, ¶ 9.

These corroboration efforts supplied ample foundation for the magistrate judge to conclude that law enforcement had sufficiently confirmed the informant's reliability.

Francis's rejoinders lack merit.  He argues (Br. 22) that the affidavit did not establish probable cause because law enforcement only corroborated "a few … innocent facts."  But law enforcement did not need to corroborate illegal activity firsthand to establish the informant's reliability.  *See, e.g.*, *Gates*, 462 U.S. at 246 (corroboration of seemingly innocent events described in an anonymous letter established a "fair probability" that defendants were engaged in criminal activity).  When "an informant is right about some things, he is more probably right about other facts."  *Id.* at 244.  Law enforcement's corroboration of the information documented above thus "suffices for the practical, common-sense judgment called for in making a probable cause determination."  *Id.*

Contrary to Francis's argument, no rigid formula exists for establishing an informant's reliability—just the general principle favoring corroboration. For that reason, "[i]t is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." *Gates*, 462 U.S. at 244. The corroboration in this case provided that basis. Nothing more was required. *See United States* v. *Barnard*, 299 F.3d 90, 94 (1st Cir. 2002) ("The risk that an informant is lying or in error need not be wholly eliminated.").

### 4.    The affiant assessed the probable significance of the informant's information.

Considering the informant's information and law enforcement's corroboration efforts, the affiant—the Agent—found probable cause to believe that Francis's vehicle would "contain at least one firearm, ammunition, controlled substances, and electronic devices" related to the crimes under investigation. SA 6, ¶ 16. The magistrate could properly credit that assessment based on the affiant's experience "handl[ing] many cooperating sources and witnesses who have provided information to [him] specifically related to shootings, the distribution of controlled substances, and various firearms offenses." SA 2, ¶ 3.

Francis argues (Br. 21-22) that the affidavit did not establish the informant's past record of reliability. But this makes no difference. "[A] known informant's statement can support probable cause even though … the informant has never provided information to the police in the past." *United States v. Kinison*, 710 F.3d 678, 682–83 (6th Cir. 2013). That is precisely what occurred here: The affidavit documented ample foundation for the informant's reliability using metrics other than past reliability.

Francis relatedly suggests (Br. 24) that law enforcement had "other means … to determine whether the informant was telling the truth." But the question is not whether law enforcement officers could have done more; it is whether they did enough to confirm the informant's reliability. The magistrate judge reasonably found that they had.

Finally, Francis argues (Br. 31) that this factor cannot be considered without weighing the information the Agent failed to reveal to the magistrate. That is incorrect. This Court "must limit [its] assessment of probable cause to information provided in the four corners of the affidavit supporting the warrant application." *United States v. Sheehan*, 70 F.4th 36, 48-49 (1st Cir. 2023) (internal quotation marks and citation omitted).

For these reasons, the district court correctly concluded that "the affidavit sufficiently establishes the probable veracity of the [informant]." JA 383.

25

**C.    The good-faith exception independently forecloses relief.**

Even if the warrant affidavit failed to sufficiently demonstrate the reliability of the informant's information, the good-faith exception forecloses the exclusionary rule's application here.

The exclusionary rule is a "'judicially created remedy'" that is "designed to deter police misconduct." *United States v. Leon*, 468 U.S. 897, 906, 916 (1984) (citation omitted) (hereinafter "*Leon*").  The Supreme Court has explained that, in order to justify suppression, a case must involve police conduct that is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system" in suppressing evidence.  *Herring v. United States*, 555 U.S. 135, 144 (2009); *see Davis v. United States*, 564 U.S. 229, 236-239 (2011).

*Leon* recognized a good-faith exception to the exclusionary rule in the context of search warrants: evidence should not be suppressed if officers acted in an "objectively reasonable" manner in relying on a search warrant, even if the warrant was later deemed deficient.  *Leon*, 468 U.S. at 922.  *Leon* noted, for instance, that an officer's reliance would not be objectively reasonable when a warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (quotation marks and citations omitted).  "[T]he threshold for establishing" such a deficiency "is a high one,

and it should be." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination." *Leon*, 468 U.S. at 921.

In the event of any probable-cause deficiency, *Leon*'s good-faith exception would apply. The detailed, firsthand nature of the informant's information about Francis using his car to traffic drugs and store a gun, the risks the informant took in providing the information, the informant's incentive to provide verifiable information, the fact that the informant's statements were against his penal interest, and law enforcement's corroboration of key aspects of the informant's information provided ample support for the probable cause showing. It was therefore objectively reasonable for the executing officers to rely on the magistrate judge's finding that probable cause existed. Accordingly the *Leon* good faith exception applies and suppression is unwarranted in all respects.

## II. The District Court Correctly Denied Francis's *Franks* Motion

Because search warrant affidavits are presumed valid, *see Franks v. Delaware*, 438 U.S. 154, 171 (1978), a defendant must clear a "high bar" to challenge the veracity of an application, *United States v. Tzannos*, 460 F.3d 128, 136 (1st Cir. 2006). Where, as here, the district court conducts a hearing, suppression of the evidence seized pursuant to the warrant is justified only "[i]f

27

a defendant, by a preponderance of the evidence, shows … that an affidavit in a warrant application contains false statements or omissions, made intentionally or with reckless disregard for the truth, and that a finding of probable cause would not have been made without those false statements or omissions." *United States v. Arias*, 848 F.3d 504, 510-11 (1st Cir. 2017); *United States v. Tanguay*, 787 F.3d 44, 49 (1st Cir. 2015).

The district court found neither requirement met here.  Francis's present appeal of that ruling lacks merit.

## A.     Standard of Review

This Court reviews a district court's conclusion that an affiant did not act deliberately or recklessly in making a misstatement or omitting a fact from an affidavit for clear error. *United States v. Mastroianni*, 749 F.2d 900, 909 (1st Cir. 1984).  The district court's probable-cause determination is subject to *de novo* review. *United States v. Arias*, 848 F.3d 504, 511 (1st Cir. 2017).

## B.     Francis has not shown clear error in the district court's finding that the Agent's omission was neither knowing nor reckless.

"To prove reckless disregard for the truth, the defendant must prove that the affiant 'in fact entertained serious doubts as to the truth' of the allegations.'" *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002) (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984).  The district court found that Francis

fell short on that burden; it saw no evidence that the Agent "harbored any doubts at all—let alone serious doubts about the veracity of the affidavit, or that he thought that either of the omitted facts were significant in assessing probable cause." JA 389.

The record amply supports the district court's finding. The Agent testified that he deemed the informant to be "completely credible" during his interview, JA 175, based on the detailed information provided, JA 195-95, the risk the informant took in providing the information, JA 175, and the informant's motivation to tell the truth in hopes of obtaining leniency on his pending charges, JA 204-205.

The Agent further testified about his review of the informant's criminal history and conclusion that the prior state conviction was insignificant because it is a broad and common charge. JA 193-194. The Agent similarly testified that the informant's dishonest traffic-stop statements did not stand out because the behavior is commonplace among motorists due to stress and "human nature." JA 334-335; *see, e.g.*, *United States* v. *Rumney*, 867 F.2d 714, 720 (1st Cir. 1989) (observing that a cooperating witness's "credibility was not undercut merely because he made predictable denials").

Finally, the district court observed that the Agent made "no secret" of the informant's other criminal conduct. JA 388. The Affidavit described the

informant's prior drug arrests and specifically notes the large quantities of fentanyl, methamphetamine, and crack cocaine found in the informant's possession.  It further highlighted the informant's associations with gang members and felons.  The Agent thus informed the magistrate judge that the informant was not a model citizen and, accordingly, provided contextual facts to assess his reliability.  JA 388-389.

Based on these guideposts, the district court credited the Agent's explanation for omitting the disputed information from the affidavit.  JA 388-389; JA 382 ("The court fully credits [the Agent's] testimony – there was no intent to omit material information nor any purpose to deceive.").  Such a "credibility determination based on live testimony … can *virtually never be clear error*."  *United States v. Dudley*, 100 F.4th 74, 81 (1st Cir. 2024) (quotation marks and citation omitted).  Because Francis has not met that high burden here, his *Franks* claim fails at this step.

In response, Francis contends (Br. 36) that "recklessness should be inferred" because "the search warrant depended on the informant's credibility."  But he cites no case law requiring the district court to find that the Agent acted recklessly in this circumstance, particularly where the Agent offered reasoned explanations for why he viewed the omitted information as insignificant.  Francis relatedly faults the Agent (Br. 37) for "merely accepting the informant's

30

allegations" considering his prior conviction and dishonest traffic-stop statements. But the district court found that the Agent took multiple other "circumstances into consideration" in assessing the informant's reliability, JA 384, and Francis has not shown clear error in that finding. *See, e.g.*, *Tanguay*, 787 F.3d at 50 ("An informant's trustworthiness may be enhanced in a number of ways.").

### C. Inclusion of the omitted information would not have vitiated probable cause.

The district court further held that "the information omitted … does not meaningfully undermine the substantive information included in the affidavit." JA 387. That holding supplies a second, independent reason to affirm.

#### 1. Prior Falsification Conviction

The district court correctly reasoned that the informant's prior state conviction for falsifying physical evidence, if included in the affidavit, would not have undermined probable cause.

That conviction was based on the informant's "conceal[ing] what appeared to be drugs by dropping them to the ground and stepping on them in order to impair their availability [in a simple drug possession investigation]." JA 112. This conduct violated New Hampshire Rev. Stat. Ann. 641:6, which makes it a crime to "[a]lter[], destroy[], conceal[] or remove[] any thing with a

31

purpose to impair its verity or availability in such proceeding or investigation." JA 112.

Given these facts, "the inclusion of [the informant's] criminal record would not have altered the finding of probable cause" because the informant's conduct did not involve "perjury or false statements" and, accordingly, "d[id] not necessarily impugn [the informant's] veracity." *Rumney*, 867 F.2d at 720. Put differently, the informant's act of trying to destroy the drugs before they could be collected as evidence has no bearing on whether he provided accurate information to law enforcement in this case. Therefore, no reasonable probability exists that the informant's falsification charge would have affected the magistrate's finding of probable cause.

This Court's decision in *United States* v. *Tanguay* is instructive. There, the district court held that an affidavit omission regarding an informant's conviction for uttering a false prescription did not alter the finding of probable cause in light of other indicators of reliability. *Tanguay*, 787 F.3d at 50. This Court affirmed, concluding that the district court permissibly "ascrib[ed] … limited significance to the altered prescription conviction." *Id*. The Court explained that "[a]n informant's trustworthiness may be enhanced in a number of ways, including his willingness to reveal his identity, the level of detail in his account, the basis of his knowledge, and the extent to which his statements are against his interest."

*Id.*  In *Tanguay*, just as in this case, the district court permissibly relied on "[a] number of such factors" in concluding that "the essence of [the informant's] account was worthy of credence."  *Id.*

Francis unpersuasively (Br. 37) seeks to distinguish *Tanguay* on the ground that the warrant affidavit there cited "considerable independent evidence" documenting the informant's reliability.  This contention ignores the contents of the warrant affidavit here, which contained similar confirmation of veracity: The district court accurately noted the specificity of the informant's information, the fact that the disclosure was against his penal interest, and law enforcement's corroboration of several key facets of the informant's information, which included law enforcement database searches, physical surveillance, and other means.  JA 383-386.

### 2.    Dishonest Traffic-Stop Answers

The district court also correctly held that the informant's dishonest traffic-stop responses, if included in the affidavit, would not have undermined probable cause.  JA 388-390.

When initially confronted by law enforcement during the July 2021 stop, the informant lied about his travels and evaded a question regarding whether there were drugs in his car.  JA 370.  But, as the district court found, *see* JA 387-

388, these statements are the type of "predictable denials" that suspects typically make before law enforcement confronts them with evidence of guilt.

Such statements do not refute probable cause. In *Rumney*, this Court reviewed an affidavit omission regarding an informant's initial denials of involvement in criminal activity and his criminal record to law enforcement. 867 F.2d at 720. Notably, the informant there twice denied involvement in a robbery before later admitting his involvement. The Court nonetheless reasoned that this sequence did "not undercut" a finding of probable cause "because [the informant] made predictable denials until the police could produce evidence linking him to the robbery." *Id*. at 720.

The same principle applies here. The informant made predictable denials to law enforcement at the start of the encounter, before being confronted with evidence of his guilt, and when the informant may have been under the influence of drugs. JA 370. His deflective statements do not refute probable cause, which the affidavit tethered to specific information that the informant provided during an in-person interview three weeks later—after law enforcement searched the informant's car and confronted him with evidence of guilt.

Moreover, the informant's traffic-stop statements do not show any willingness to falsely accuse someone else to save himself. *See, e.g.*, *United States v. Comer*, 565 F. App'x 729, 733–34 (10th Cir. 2014) (holding that the failure to

disclose the informant's criminal history—including a check forgery conviction—did not affect probable cause because it did not show a willingness to falsely implicate another person in a crime or undermine the basis of the informant's knowledge).  As a result, they do not undermine the reliability of the informant's subsequent statements cited in the affidavit.

Finally, a warrant application need not eliminate the risk that the informant was lying to establish probable cause.  *See United States v. Capozzi,* 347 F.3d 327, 333 (1st Cir. 2003).  Instead, the application must merely "suggest a 'fair probability' that evidence of a crime will be found in the place to be searched."  *Gates*, 462 U.S. at 238.  As the district court correctly held, the Affidavit does so, even when considered alongside the informant's traffic-stop statements.  JA 389 ("Neither the [informant's] conviction nor the [informant's] failure to be entirely forthright with the police during his July 31 stop would have so significantly diminished the [informant's] credibility that the magistrate judge's probable cause determination would have been different.")

## CONCLUSION

The Court should affirm the district court's judgment.


Respectfully submitted,

JOHN J. MCCORMACK
Attorney for the United States Acting Under
Authority Conferred by 28 U.S.C. § 515

Aaron Gingrande
AARON G. GINGRANDE
Assistant U.S. Attorney
District of New Hampshire

## CERTIFICATE OF COMPLAINCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,229 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared on a proportionally spaced typeface using Microsoft Word Office 365 in 14-point Calisto MT font.

/s/ Aaron G. Gingrande
Aaron G. Gingrande
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on December 20, 2024, I caused a copy of this brief to be electronically served on counsel for appellant, listed below, via the Court's ECF system.

Richard Guerriero
Lothstein Guerriero, PLLC
39 Central Square, Suite 202
Keene, NH 03431

/s/ Aaron G. Gingrande
Aaron G. Gingrande
Assistant United States Attorney