UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

NO. 24-1386
_____

**UNITED STATES,
APPELLEE**

**v.**

**MICHAEL FRANCIS,
DEFENDANT - APPELLANT**
_____

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE
_____

**REPLY BRIEF OF MICHAEL FRANCIS**
_____

Richard Guerriero
1st Circuit Bar ID 1164673
Oliver Bloom
1st Circuit Bar ID 1211240
Lothstein Guerriero, PLLC
39 Central Square, Suite 202
Keene, NH 03431
(603) 352-5000
richard@nhdefender.com
oliver@nhdefender.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................3

REPLY REGARDING WHETHER THE DISTRICT COURT ERRED IN NOT GRANTING THE MOTION TO SUPPRESS ........................................................5

*None of the Cases Cited by the Government Involve an Affidavit with the Combination of Defects Present in this Case.* ........................................................5

*The Government Wrongly Discounts the Absence of Corroborating Facts Linked to Criminal Activity.* ........................................................9

*The Government's Attempts to Bolster the Informant's Credibility Fail.* ............13

*The Government Downplays the Significance of the Informant's Felony Criminal Conviction.* ........................................................15

*The Good Faith Exception Does Not Save the Search Warrant.* ........................18

CONCLUSION ........................................................................19

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a) ..........................20

CERTIFICATE OF SERVICE ............................................................21

## TABLE OF AUTHORITIES

Cases

*Fla. v. J.L.*, 529 U.S. 266 (2000) ...........................................................................10

*Franks v. Delaware*, 438 U.S. 154 (1978).................................................... 8, 16, 19

*Illinois v. Gates*, 462 U.S. 213 (1983) ....................................................................15

*In re Juvenile 2003-187*, 151 N.H. 14 (2004)..........................................................16

*Johnson v. United States*, 333 U.S. 10 (1948) ........................................................18

*State v. Daoud*, 158 N.H. 334 (2009) ......................................................................16

*United States v. Abernathy*, 843 F.3d 243 (2016)....................................................19

*United States v. Adams*, 305 F.3d 30 (1st Cir. 2002)...............................................16

*United States v. Arias*, 848 F.3d 504 (1st Cir. 2017)..................................................9

*United States v. Austin*, 991 F.3d 51 (1st Cir. 2021) ..................................... 6, 8, 14

*United States v. Barnard*, 299 F.3d 90 (1st Cir. 2002)...........................................6, 7

*United States v. Batista*, 31 F.4th 820 (1st Cir. 2022) ...............................................9

*United States v. Campbell*, 732 F.2d 1017 (1st Cir. 1984).....................................13

*United States v. Colkley*, 899 F.2d 297 (4th Cir. 1990).........................................19

*United States v. Croto*, 570 F.3d 11 (1st Cir. 2009) ..................................... 6, 8, 13

*United States v. Jacobs*, 986 F.2d 1231 (8th Cir. 1993).........................................19

*United States v. Khounsavanh,* 113 F.3d 279 (1st Cir. 1997) ................................15

*United States v. Leon*, 468 U.S. 897 (1984) ...........................................................19

*United States v. Leonard*, 17 F.4th 218 (1st Cir. 2021)................................. 6, 7, 14

*United States v. Maglio*, 21 F.4th 179 (1st Cir. 2021)...........................................7, 9

*United States v. Orr*, 864 F.2d 1505 (10th Cir. 1988)............................................19

*United States v. Ramírez-Rivera*, 800 F.3d 1 (1st Cir. 2015) ...................................10

*United States v. Ranney*, 298 F.3d 74 (1st Cir. 2002) .........................................6, 8

*United States v. Romain*, 393 F.3d 63 (1st Cir. 2004) ...........................................17

*United States v. Rumney*, 867 F.2d 714 (1st Cir. 1989) ........................................16

*United States v. Scalia*, 993 F.2d 984 (1st Cir. 1993) .......................................8, 13

*United States v. Stewart*, 337 F.3d 103 (1st Cir. 2003) ........................................18

*United States v. Tanguay*, 811 F.3d 78 (1st Cir. 2016) .........................................16

*United States v. Tzannos*, 460 F.3d 128 (1st Cir. 2006) .......................................7, 9

*United States v. Vigeant*, 176 F.3d 565 (1st Cir. 1999) ........................................19

*United States v. Vongkaysone*, 434 F.3d 68 (1st Cir. 2006) ..................................6, 9

*United States v. Zayas-Diaz*, 95 F.3d 105 (1st Cir. 1996) .....................................5, 7

Statutes

NH RSA 625:9, III(a)(2) ..........................................................................................15

NH RSA 641:1 .......................................................................................................15

NH RSA 641:2 .......................................................................................................15

NH RSA 641:4 .......................................................................................................15

NH RSA 641:5 .......................................................................................................15

NH RSA 641:6 .......................................................................................................15

RSA 318-B:2 .........................................................................................................14

RSA 318-B:26, I ....................................................................................................14

Treatises

Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* ... 13, 14, 15

## REPLY REGARDING WHETHER THE DISTRICT COURT ERRED IN NOT GRANTING THE MOTION TO SUPPRESS.[1]

*None of the Cases Cited by the Government Involve an Affidavit with the Combination of Defects Present in this Case.*

The Government cites a variety of cases to piece together its argument that Agent Burke's affidavit was sufficient to establish probable cause. However, none of the cases cited by the Government involves an affidavit with the combination of defects present in this case. The Government does not point to any case where there was a lone informant with no track record of reliability and a felony criminal history of lying, whose claims of having observed criminal activity were entirely uncorroborated, and whose corroborated claims only provided information which could be known easily by any layperson.

In most of the cases the Government cites, law enforcement relied on multiple confidential informants or witnesses. *See, e.g.*, *United States v. Zayas-Diaz*, 95 F.3d 105, 108-10 (1st Cir. 1996) (three confidential informants, two of whom were "reliable" and where one CI led police to the defendant's residence and provided detailed descriptions of the interior, corroborated by additional police

---

[1] References to the briefs and record are as follows:
"Br. #" refers to the page number of Francis's opening brief;
"Gov. Br. #" refers to the page number of the Government's brief;
"Add. #" refers to the page number of the Addendum to Francis's opening brief;
"App. #" refers to the page number of the Joint Appendix;
"S.App. #" refers to the page number of the Sealed Appendix.

investigation), Gov. Br. 17; *United States v. Croto*, 570 F.3d 11, 12-14 (1st Cir. 2009) (two informants, one of whom provided detailed descriptions of firearms in the residence, and both of whom were "concerned citizens reporting potential criminal activity" and "willingly provided the information and received nothing in return"), Gov. Br. 17; *United States v. Leonard*, 17 F.4th 218, 221-22, 226 (1st Cir. 2021) (three confidential informants, at least two of whom law enforcement considered "credible" or "reliable", detailed descriptions of the defendant's residences, a police-orchestrated controlled buy, and "some independent investigation" by police), Gov. Br. 18, 23; *United States v. Austin*, 991 F.3d 51, 54, 56 (1st Cir. 2021) (statements from two individuals, one of whom was a victim, the other of whom resided with the defendant, as well as inculpatory statements by the defendant), Gov. Br. 18; *United States v. Vongkaysone*, 434 F.3d 68, 69-73 (1st Cir. 2006) (at least two informants, one of whom arranged recorded phone calls and later a controlled buy with the defendant surveilled by law enforcement), Gov. Br. 19; *United States v. Barnard*, 299 F.3d 90, 92 (1st Cir. 2002) (two "reliable" informants or sources who described firearms at the defendant's residence, one of whom described being threatened recently by the defendant with a specific firearm and detailed where the defendant kept it while he slept), Gov. Br. 19-20, 24; *United States v. Ranney*, 298 F.3d 74, 77, 79 (1st Cir. 2002) (affidavit detailed eighteen customers who claimed to have been defrauded, as well as information

6

about company's difficulties in fulfilling orders, statements from an employee, plus bank records), Gov. Br. 28.

Furthermore, in many of the cases cited by the Government, law enforcement had some track record of reliability with the informant. *See, e.g.*, *Zayas-Diaz*, 95 F.3d at 108 (affidavit described both informants as "reliable"), Gov't Br. 17; *Leonard*, 17 F.4th at 221-22 (affidavit described one as "proven reliable" from prior investigations and another had "provided information that was deemed credible by police"), Gov't Br. 18, 23; *Barnard*, 299 F.3d at 92 (affidavit describes one informant as "very reliable" and another as "reliable"), Gov't Br. 19, 20, 24; *United States v. Maglio*, 21 F.4th 179, 182 (1st Cir. 2021) (affidavit described informant as having "provided reliable information to law enforcement"), Gov. Br. 17; *United States v. Tzannos*, 460 F.3d 128, 131 (1st Cir. 2006) (affidavit described how informant "has proven to be reliable and true" and provided "extensive details on [his] past cooperation"), Gov. Br. 27. Here, by contrast, Agent Burke did not describe the informant as "credible" or "reliable," despite describing informants as "credible" in other affidavits he had drafted. Br. 36; S.App. 2-6 (affidavit not describing informant as "credible" or "reliable"); App. 336 (Burke testifying that "I don't recall" if he described informant as "credible" in the affidavit).

Only later, after the district court granted a *Franks v. Delaware*, 438 U.S.

154 (1978) hearing, did Agent Burke profess to find the informant credible. App.

175 ("But I found [the informant's information] to be completely credible"); *id.* at

195 ("I just found – I found the interviewee to be credible…"); *id.* at 336 ("I don't

recall [if he wrote in the affidavit that the informant was credible], but I did.

Otherwise, I wouldn't have wrote it in an affidavit and put my name on it"). Even

though Agent Burke testified that in other search warrant affidavits he would note

that he finds a particular witness or informant credible, he did not do so here. *Id.* at

336.

In other instances, the Government cited cases in which the informants were

"concerned citizens reporting potential criminal activity, whose stories may be

more easily accepted than those of confidential informants whose motivations

make their stories more suspect." *Croto*, 570 F.3d at 14 (citing *United States v.

Scalia*, 993 F.2d 984, 987 (1st Cir. 1993), Gov't Br. 17. *See also Austin*, 991 F.3d

at 56 (affidavit witness "was the victim of [defendant's] reported threat, and a

percipient witness to [defendant's] possession of contraband"), Gov't Br. 18;

*Ranney*, 298 F.3d at 76-77 (affidavit included information from twelve defrauded

customers and an employee), Gov't Br. 28.

Similarly, in cases where there was only one witness, even if it was one with

a track record of reliability, law enforcement corroborated allegations. *See, e.g.*,

*Vongkaysone*, 434 F.3d at 74-75 (recording phone calls between informant and defendant and surveilling an attempted drug sale between the two), Gov't Br. 19; *Maglio*, 21 F.4th at 181-83 (relying on information from informant, police surveil location, obtain and review utility bills, and link with other police investigations), Gov't Br. 17; *United States v. Batista*, 31 F.4th 820, 821-22 (1st Cir. 2022) (cooperating witness made recorded phone calls with the defendant and arranged a surveilled drug purchase from defendant, and witness personally identified defendant as his drug supplier), Gov. Br. 19; *Tzannos*, 460 F.3d at 130-31 ("reliable" informant's information corroborated by subpoenas of telephone records, surveillance of the defendant's residence, and a "controlled call" orchestrated by police with the defendant), Gov't Br. 27; *United States v. Arias*, 848 F.3d 504, 509 (1st Cir. 2017) (police tapped phones and physically surveilled suspects), Gov. Br. 28. *See also* Br. 24 (identifying other cases where "confirmation of electronic communications between the informant and suspect helps buttress the informant's credibility").

*The Government Wrongly Discounts the Absence of Corroborating Facts Linked to Criminal Activity.*

The Government attempts, through argument, to add substance to the informant's claims as described by Agent Burke in his affidavit. The Government says the informant provided "key information", Gov. Br. 11, "key details", *id.* at 21, "key aspects", *id.* at 27, and "key facets." *Id.* at 33. Elsewhere it refers to

"detailed descriptions," *id.* at 19, "precise details", *id.*, the "detailed, firsthand nature of the informant's information," *id.* at 27, "detailed information." *id.* at 3, 15, 29, or a "detailed description." *Id.* at 11, 22. But as Francis has already explained, "the informant's claims of firsthand knowledge do not establish that he actually had any firsthand knowledge." Br. 26. The reality is that the affidavit has little substance. Most of the affidavit consists of boilerplate language regarding electronic devices. S.App. 7-16. Less than three-and-a-half pages of the seventeen pertain to the evidence of probable cause. S.App. 3-6, ¶¶ 7-16. Those few pages consist of either harmless facts which any layperson could discover and corroborate, or claims of criminal activity which are completely uncorroborated. *Id.*

Corroboration of the description of Francis's car added nothing to the probable cause determination. The description was the "kind of information…that is immediately visible to anyone who passes the [car, and] is not – without more – useful information when it comes to making a probable cause determination." *United States v. Ramírez-Rivera*, 800 F.3d 1, 28 (1st Cir. 2015). That is because, as the Supreme Court has also explained, "[a]n accurate description of a subject's readily observable location and appearance…does not show that the tipster has knowledge of concealed criminal activity." *Fla. v. J.L.*, 529 U.S. 266, 272 (2000). As in *Ramírez-Rivera*, "the police did not corroborate any of the information that

might actually have suggested suspicious activity." *Ramírez-Rivera*, 800 F.3d at 29.

Similarly, there is little substance to the Government arguments that the informant provided the "license plate" of Mr. Francis's car. Gov. Br. 11, 22. In the affidavit, Agent Burke reported that the informant had told him that Francis had "permanent plates [from NH]." S.App. 5, ¶ 14. This is a far cry from providing the license plate number itself and a meaningless piece of information considering that Mr. Francis was a citizen of New Hampshire and his vehicle would therefore have a New Hampshire license plate. Instead, it is simply another detail which could have been reported by someone who had never actually interacted with Mr. Francis in any relevant way.

At the same time, none of the informant's allegations of criminal activity were corroborated. The informant claimed "daily" meetups with Francis "arranged by traditional cellular voice calls and text messages." S.App. 4, ¶¶ 12-13. Yet, law enforcement never corroborated the informant's claims of personally knowing Francis, not even of having texted with him or talked to him by phone. App. 196-97. As Francis explained in his brief, "[t]here [were] no text messages, no recorded conversations, no statements from any other witnesses who saw the two together, or anything of the kind, which might confirm that the informant was meeting with Francis or receiving drugs from him." Br. 21. Likewise, as Francis noted in his

11

brief, "law enforcement did not obtain any surveillance video, GPS records, or other evidence that could have been used to evaluate the informant's claims about having met Francis in a particular location and confirmed these alleged meetups in west Manchester." *Id.* at 25. *See also id.* at 26-27 (law enforcement witnessed no meetups between informant and Francis, "[n]or was there any other evidence of the claimed meetings, such as security video collected from a nearby business showing an alleged meeting").

Likewise, although the informant gave details about kinds of drugs he supposedly got from Francis and the prices Francis allegedly charged, no evidence confirms those claims. The informant told law enforcement that "the controlled substances from the first motor vehicle stop were personally provided to him" by someone else. S.App. 4, ¶ 10. The informant's quoted prices could just as likely have come from that drug dealer. After all, the drugs found in that initial stop (methamphetamine, heroin/fentanyl, and crack cocaine, S.App. 3-4, ¶ 7) were consistent with the prices of the array of drugs the informant claimed to regularly purchase (methamphetamine, cocaine, heroin/fentanyl, S.App. 5, ¶ 12). Nothing other than the informant's uncorroborated claim links details about the kinds of drugs and prices to Francis.

*The Government's Attempts to Bolster the Informant's Credibility Fail.*

The Government claims that law enforcement's knowledge of the informant's identity "bolsters the informant's credibility because it opens the informant up for charges related to making a false report." Gov. Br. 17 (quoting *Croto*, 570 F.3d at 14) (cleaned up). But as noted above, the informants in *Croto* were "concerned citizens" who "willingly provided the information and received nothing in return" and "whose stories may be more easily accepted than those of confidential informants whose motivations make their stories more suspect." *Croto*, 570 F.3d at 14. *See also Scalia*, 993 F.2d at 987 ("In the absence of a prior record of reliability, we have recognized that, where the informant was "*not a professional*…but a private citizen with *no known criminal record* or other criminal contacts, who came forward on his own…[,] the informant's story may be more easily accepted…") (citing *United States v. Campbell*, 732 F.2d 1017, 1019 (1st Cir. 1984) (italics in original). The citizen informants in *Croto* were not suspects, like the informant in this case, who had been arrested for felony drug charges and who was looking for a way to avoid or mitigate criminal liability. As Professor LaFave has explained,

> if the police apprehended a person for possession of drugs and he were then to admit to purchases from various named sources in the recent past, there would be cause for skepticism. Such a generalized and unfocused set of allegations might well be nothing more than a series of falsehoods involving the names of several persons he has heard it rumored use or sell narcotics, for he could well anticipate that if the police act upon the information they

will likely discover narcotics at some of the identified premises.
2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.3(c) (6th ed. 2024).

In this case, the informant was already facing significant criminal liability after being caught twice with close to a kilogram of narcotics. S.App. 3-4, ¶¶ 7-8. He was charged with violations of New Hampshire's RSA 318-B:2 and the quantities he possessed exposed him to sentences of up to 30 years in prison. *See* RSA 318-B:26, I. He had every reason to offer a "generalized and unfocused" set of accusations not based on actual personal knowledge, not because he was a concerned citizen, but because he was concerned about his own fate.

Likewise, the Government claims that "the informant made statements against penal interest" which "implicated the informant in a conspiracy" and therefore "carry inherent reliability." Gov. Br. 18. But the analogous precedents the Government cites in support, *Leonard*, 17 F.4th at 225 and *Austin*, 991 F.3d at 56, are easily distinguishable. As noted above, in *Leonard*, there were three confidential informants, two of whom had track records of reliability and "several components of the CIs' information were corroborated." *Leonard*, 17 F.4th at 225-26. And in *Austin*, the statements were not even from informants facing criminal prosecution, but a victim and a housemate of the defendant. *Austin*, 991 F.3d at 54. The Supreme Court and this Court have said that innocent private citizens are more

trustworthy, *see Illinois v. Gates*, 462 U.S. 213, 233-34 (1983); Br. 34-35

(collecting First Circuit cases), yet the Government claims that criminals caught

with large quantities of drugs are equally reliable. Both cannot be true.

As this Court has explained, "what is needed is that 'the probability of a

lying or inaccurate informer has been sufficiently reduced by corroborative facts

and observations.'" *United States v. Khounsavanh,* 113 F.3d 279, 284 (1st Cir.

1997) (quoting 2 LaFave, *Search and Seizure* 168 (3d ed. 1996)). The agent in this

case simply did not take steps to corroborate facts which would reduce the risk that

the informant was lying.

*The Government Downplays the Significance of the Informant's Felony Criminal
Conviction.*

The Government also claims that the informant's undisclosed prior

conviction for Falsifying Physical Evidence, under NH RSA 641:6, "has no

bearing on whether he provided accurate information to law enforcement in this

case." Gov't Br. 32. That conclusion is contrary to the law and common sense. The

criminal conviction at issue falls within a chapter of New Hampshire law entitled

"Falsification in Official Matters." NH RSA Chapter 641. The crime is a class B

felony punishable by up to seven years in prison. NH RSA 641:6; NH RSA 625:9,

III(a)(2). Other listed crimes in the same chapter include perjury, NH RSA 641:1,

false swearing, NH RSA 641:2, false reports to law enforcement, NH RSA 641:4,

and tampering with witnesses and informants, NH RSA 641:5. These are "crimes

that by their very nature impugn a person's veracity." *United States v. Tanguay*, 811 F.3d 78, 82 (1st Cir. 2016). *Cf. United States v. Adams*, 305 F.3d 30, 36 (1st Cir. 2002) (distinguishing between "crimes involv[ing] false statements" and other crimes in the *Franks* context).

The Government's reference to *United States v. Rumney*, 867 F.2d 714 (1st Cir. 1989), does not help its argument. Gov't Br. 32. In *Rumney*, a police officer's affidavit for a search warrant did not mention that the informant falsely denied culpability at the time of his arrest or that he had a criminal record. *Rumney*, 867 F.2d at 716. This Court said those omissions did not undermine the probable cause stated in the affidavit. *Id.* at 720-21. However, *Rumney* involved a very different situation than this case. First, and most importantly, the prior record of the informant in *Rumney* was not one "involving perjury or false statements." *Id*. at 720. Here, the informant had been convicted of a felony crime of falsifying physical evidence, a crime which, as a matter of New Hampshire law, requires actively concealing evidence of a crime with a purpose to prevent disclosure. *See In re Juvenile 2003-187*, 151 N.H. 14, 17 (2004) (the offense requires more than "simple abandonment" of the evidence); *see also State v. Daoud*, 158 N.H. 334, 337 (2009). In other words, unlike the informant in *Rumney*, the informant's prior conviction in this case was a felony crime of attempting to deceive law enforcement.

Regarding the informant's denials of culpability in *Rumney*, those "predictable denials" were by an accomplice to a robbery whose vehicle was identified at the scene and who twice denied his involvement before changing his story after his arrest and being "confronted with evidence linking him to the robbery." *Rumney*, 867 F.3d at 715-16, 720. Here, by contrast, the informant lied about his name, lied about the drugs in his vehicle, and lied about his travels. App. 370. His story only changed weeks later when he was in custody and looking to cut a deal.

In addition, the Government offers inconsistent arguments when describing the informant's dishonesty to law enforcement. On the one hand, it claims that because law enforcement interacted with him face-to-face, this "affords law enforcement 'the opportunity to perceive and evaluate personally [the] informant's mannerisms, expressions, and tone of voice' and to assess the informant's veracity." Gov. Br. 18 (quoting *United States v. Romain*, 393 F.3d 63, 73 (1st Cir. 2004)). But when law enforcement describes the informant as being "deceptive" and providing erroneous statements, App. 289-90, the explanation is that they were nothing more than "predictable denials" from someone under the influence of drugs. Gov. Br. 34; App. 370. An informant who lies about his name, lies about drugs found in his vehicle, and lies about where he is going from, App. 370, does not suddenly become trustworthy when he implicates another person.

17

Most importantly, as Francis explained in his brief, it was not up to Agent Burke to decide which crimes of falsity were worthy of inclusion in the affidavit. A judge or magistrate, not the law enforcement agent, is supposed to determine whether there is enough information to consider the informant to be reliable. Br. 33-34. The Supreme Court has instructed that the Fourth Amendment requires "that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948). *See also United States v. Stewart*, 337 F.3d 103, 107 (1st Cir. 2003). By leaving important information out of the affidavit, Agent Burke deprived Mr. Francis of the opportunity to have a magistrate make that determination.

*The Good Faith Exception Does Not Save the Search Warrant.*

Finally, the Government argues that the "good-faith exception independently forecloses relief" because it was "objectively reasonable for the executing officers to rely on the magistrate's finding that probable cause existed." Gov. Br. 26-27. This is wrong.

The same agent who drafted the affidavit, Agent Burke, executed the warrant. App. 162, 175-76. As the very case that spawned the good faith exception explained, "[s]uppression… remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant

knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Leon*, 468 U.S. 897, 923 (1984). *See also United States v. Vigeant*, 176 F.3d 565, 572 (1st Cir. 1999); *United States v. Orr*, 864 F.2d 1505, 1508 n.3 (10th Cir. 1988) (explaining how the "*Leon* good faith exception does not apply to search warrants granted on the basis of a recklessly or intentionally false affidavit that violates *Franks*"); *United States v. Abernathy*, 843 F.3d 243, 257-58 (2016) (same and collecting cases); *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) ("under *Leon*, a *Franks* violation is not excused"); *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) ("A warrant that violates *Franks* is not subject to the good-faith exception to the exclusion rule announced in" *Leon*). In short, the *Leon* good faith exception does not save a recklessly drafted warrant affidavit.

## CONCLUSION

Considering the reasons set forth in his brief and reply brief, Francis respectfully requests that this Court vacate his conviction, reverse the denial of his motion to suppress, and remand for further proceedings.

Date: January 21, 2025

/s/ *Richard Guerriero*
Richard Guerriero
1st Circuit Bar ID 1164673
Oliver Bloom
1st Circuit Bar ID 1211240
Lothstein Guerriero, PLLC
39 Central Square, Suite 202
Keene, NH 03431
(603) 352-5000
richard@nhdefender.com
oliver@nhdefender.com

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)

I, Richard Guerriero, hereby certify that the foregoing reply brief of

Appellant Michael Francis complies with the type-volume limitation of FRAP

32(a)(7)(B):

1. This reply brief contains 3549 words, not including the parts of the brief

exempted by FRAP 32(a)(7)(B)(iii).

2. This brief has been prepared in a proportionally spaced typeface using

Microsoft Word for Office 365 (2025) in 14-point Times New Roman.

/s/ *Richard Guerriero*
Richard Guerriero
1st Circuit Bar ID 1164673
NH Bar ID 10530

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was forwarded by electronic mail through the ECF system on January 21, 2025, to Assistant United States Attorneys David Lieberman and Aaron Gingrande, of the United States Attorney's Office, 55 Pleasant Street, 4th Floor Concord, NH 03301. A copy of the brief was mailed by U.S. Mail to Appellant, Michael Francis #63480-509, USP Canaan, PO Box 300, Waymart, PA 18472.

Filed January 21, 2025.

/s/ *Richard Guerriero*
Richard Guerriero
1st Circuit Bar ID 1164673
NH Bar ID 10530